FILED
COURT OF APPEALS
DIVISION II

2013 DEC 31 AM 9: 14

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MUTUAL OF ENUMCLAW INSURANCE COMPANY, a Washington corporation, | |
| Appellant/Cross Respondent, | No. 42940-3-II |
| v. | |
| GREGG ROOFING, INC. a Washington corporation, | PUBLISHED OPINION |
| Respondent/Cross Appellant. | |

MAXA, J. – Mutual of Enumclaw Insurance Co. (MOE) appeals a $1.5 million jury verdict award on Gregg Roofing, Inc.'s claim for tortious interference with a business relationship. The evidence at trial indicated that Gregg Roofing sustained minimal lost profits and consequential damages, meaning that a large majority of the damages award must have related to injury to its reputation. MOE argues that Gregg Roofing failed to present any evidence to quantify the amount of injury to its reputation, and therefore that the trial court erred when it denied MOE's CR 50 motion for judgment as a matter of law and its alternative motions for a new trial or reduction of the verdict. We agree, and hold that Gregg Roofing's evidence regarding injury to its reputation was insufficient to support the jury verdict. We reverse and remand for a new trial on the damages issue only.

FACTS

*Claim Background*

In June 2005, Parkside Church in Camas hired Gregg Roofing to install a new roof on the church and to repair dry rot. In August, after Gregg Roofing had removed the roof in preparation to install a new one, an unexpected rain storm damaged the building's interior when water leaked through the temporary covering Gregg Roofing had installed. The church filed a water damage claim with its insurer, MOE, which assigned its employee Robert Lowrie as the adjuster for the claim.

Lowrie met with the church's pastor and persuaded him to terminate Gregg Roofing's contract and instead to hire Charles Prescott Restoration, Inc. (CPR), owned by Donald Chill, to repair the water damage. The church hired CPR, fired Gregg Roofing, and did not allow Gregg Roofing to complete the remaining $5,301 on its $16,212 roof replacement contract. In exchange for being given the job, Chill gave Lowrie financial gifts and "kickbacks." Clerk's Papers (CP) at 135. CPR fraudulently performed excessive and unnecessary repairs for which it received insurance payments, which Lowrie authorized despite knowing that the repairs were unnecessary. MOE paid a total of $2,345,537.66 to repair the damage to the church, a significant portion of which it paid to CPR.

MOE was subrogated to the church's rights and sued Gregg Roofing, alleging that Gregg Roofing had breached its contract by causing the damage to the church.[1] Gregg Roofing asserted various counterclaims, including a claim for tortious interference with a business relationship based on Lowrie convincing the church to fire Gregg Roofing. Gregg Roofing alleged that MOE

---

[1] MOE did not seek reimbursement for the insurance money fraudulently paid to CPR.

2

No. 42940-3-II

was liable for Lowrie's conduct because he was acting within the scope of his employment with MOE.

*Pretrial Rulings*

In a separate lawsuit MOE also had sued Chill and CPR for fraud, negligent misrepresentation, and violation of the Consumer Protection Act, chapter 19.86 RCW. The trial court originally consolidated MOE's case against Chill and CPR with its case against Gregg Roofing. However, Gregg Roofing successfully moved to sever the two cases before trial. Gregg Roofing and MOE subsequently filed summary judgment motions, which resulted in the dismissal of all claims and counterclaims except MOE's breach of contract claim and Gregg Roofing's tortious interference with a business relationship claim.

During discovery, MOE propounded an interrogatory to Gregg Roofing asking for the amount of claimed damages and the method of calculation. Gregg Roofing's response was that damages to its business reputation were " 'at least $10,000.' " CP at 241. MOE also made a request for production for Gregg Roofing's tax returns, but Gregg Roofing failed to produce them until the week before trial. Allen Tiffany, Gregg Roofing's president, testified in his deposition that he could have retrieved the documents from his attic earlier but did not. Because Gregg Roofing failed to timely produce its tax returns and because MOE claimed that damages were speculative, MOE moved to exclude evidence of damage to Gregg Roofing's business reputation. The trial court denied the motion to exclude all evidence of damage to Gregg Roofing's business reputation, but granted MOE's motion to exclude evidence of lost profits except for the $5,301 remaining on the contract.

3

No. 42940-3-II

When the trial court granted Gregg Roofing's motion to sever MOE's case against Chill and CPR from the Gregg Roofing case, it also granted Gregg Roofing's motion to exclude evidence or argument regarding any fraud. Before trial, Gregg Roofing again moved to exclude evidence of Chill's fraud conviction and evidence that he was in prison, arguing that the evidence was irrelevant and inadmissible under ER 403. The trial court granted the motion. At trial, MOE made an offer of proof for evidence relating to Chill's fraud conviction as well as testimony regarding the connection between Chill and Lowrie. The trial court denied the request to admit them based on its previous rulings.

*Damages Evidence*

At trial, Gregg Roofing's only testimony regarding damages came from Tiffany, its president. With regard to lost profits, Tiffany testified that Gregg Roofing was not allowed to finish the project and therefore was not paid the $5,301.07 remaining on the contract. He stated that Gregg Roofing expected a 10 percent profit on the Parkside Church contract. Therefore, the total lost profits on the amount the church failed to pay were approximately $530. With regard to consequential damages, Tiffany testified that after the church incident Gregg Roofing was not asked to bid on several other residential and commercial roofing projects on which the company normally would have been expected to bid. He specifically mentioned two churches and a four-building apartment complex. Tiffany also testified that another contractor had recommended Gregg Roofing for a job, but that the project owner declined because of the "Parkside Church fiasco." Report of Proceedings (RP) at 1646. Gregg Roofing did not provide any evidence regarding the profits it may have lost because it did not bid on these projects or any other evidence regarding financial losses relating to MOE's conduct.

4

Tiffany provided minimal testimony regarding the fact that Gregg Roofing had sustained injury to its reputation. He expressed his opinion that Gregg Roofing's business reputation had been injured. He explained that "everybody" knew that Gregg Roofing had started work on the church because its boldly-labeled yellow trucks had been there for two weeks before the flooding, and that the church's roof remained unfinished with plastic sheeting over the top of it for months. As noted above, Tiffany also mentioned not being asked to bid on several jobs, but admitted that "I don't know that I totally know how much work we missed and how much . . . the word spread in a negative manner around the community." RP at 1626. Tiffany concluded, "I know it's hurt . . . our reputation, and our name for doing quality work was damaged." RP at 1623

Tiffany also provided almost no testimony regarding the *amount* of damages caused by Gregg Roofing's injured reputation. Tiffany made only five statements at trial regarding injury to reputation damages, and in four of those statements admitted that Gregg Roofing had no documents or any other evidence regarding the amount of damages.

> Q. . . . [I]s there anything else in terms of reputational damage . . . that you can tell the jury about that you're testifying today that arise out of this breach of the contract? . . .
> A. . . . I don't know how you ever come up with a number like that, I just know . . . we've been severely damaged in our local neighborhood as a result of this.

RP at 1625-26.

> Q. . . . So you're not putting any numbers, you're not bringing out any documents, you're just going to let the jury decide what that is.
> A. That's correct.

RP at 1626.

> Q. There are no documents that support any claim of financial loss for damage to your reputation[,] correct?
> A. That's correct. How do you put a number on that?

5

RP at 1667.

> Q. . . . And you didn't put a number on the damage to reputation today, did you?
> A. No.
> . . . .
> Q. . . . [A]re you asking [the jury] to use their own good judgment to figure out how much that's worth to your business?
> A. I'm praying that.

RP at 1673.

In the fifth statement, Tiffany was asked about Gregg Roofing's answer to the damages interrogatory, which stated that the amount of its reputation damages was at least $10,000. Tiffany acknowledged that this answer had been prepared by Gregg Roofing's lawyers. Tiffany testified that since 2009 he had observed additional damage to Gregg Roofing's reputation, but he did not quantify the amount.

Tiffany also was asked how he felt about seeing the unrepaired roof when he drove past the church, to which he responded, "Not very good." RP at 1620. MOE objected, arguing, "There's no claim for emotional distress damages." RP at 1620. The trial court overruled the objection and allowed Tiffany to continue. He stated, "[W]e knew that this was a very negative effect on our business and we were naturally very upset by it." RP at 1621.

*Verdict and Post Trial Motions*

The jury found that Gregg Roofing did not breach its contract with the church. On Gregg Roofing's counterclaim, the jury found that MOE tortiously interfered with Gregg Roofing's contract with the church through Lowrie as its agent, and that the interference was a proximate cause of Gregg Roofing's damages. The jury awarded Gregg Roofing $1.5 million in damages.

6

No. 42940-3-II

MOE had moved at the close of Gregg Roofing's case for judgment as a matter of law under CR 50(a) because Gregg Roofing failed to show a quantifiable amount of damage to its business reputation, which the trial court had denied. After the jury returned its verdict, MOE renewed its motion for judgment as a matter of law under CR 50(b) and moved for a new trial under CR 59 or, as an alternative, reduction of the verdict under RCW 4.76.030. MOE argued that the damages were speculative because the jury did not receive any evidence concerning Gregg Roofing's annual profits, the business's value, or the value of any of the jobs on which the company was not asked to bid. The trial court denied the motions.

MOE appeals the trial court's denial of its motion for judgment as a matter of law and its motion for a new trial or in the alternative, a reduction of the verdict. MOE also appeals the evidentiary rulings regarding Tiffany's testimony about his feelings about damage to the business and evidence of Chill's fraudulent conduct. Gregg Roofing cross appeals, arguing that the trial court erred in failing to give its proposed instruction 19 regarding recoverable damages for tortious interference with a business relationship.

ANALYSIS

A.    DAMAGES RECOVERABLE FOR INJURY TO A CORPORATION'S REPUTATION

The primary issue in this case is the type of evidence required to support a damages award for injury to a business's reputation. MOE argues that a business must produce some evidence that quantifies its actual loss from injury to reputation in order to support a verdict awarding damages for that injury. Gregg Roofing responds that evidence that a business's reputation was harmed is sufficient to support a verdict for injury to reputation damages, even in the absence of any evidence quantifying those damages. We agree with MOE.

7

1.    Standard of Review

MOE filed post trial motions for judgment as a matter of law under CR 50(a)(1), a new trial under CR 59(a), and reduction of the verdict as an alternative to a new trial under RCW 4.76.030. We cannot evaluate the trial court's rulings on these motions until we resolve the fundamental issue of what type of evidence a business must produce to recover damages for injury to reputation. This is an independent legal issue. We review legal issues de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

2.    Recovery for Injury to Business Reputation

A party claiming tortious interference with a business relationship must prove: "(1) the existence of a valid contractual relationship of which the defendant has knowledge, (2) intentional interference with an improper motive or by improper means that causes breach or termination of the contractual relationship, and (3) resultant damage." *Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 168, 273 P.3d 965 (2012). If the trier of fact finds that these elements have been met, the party claiming tortious interference with a business relationship may recover all "losses" proximately caused by the interference. *Sunland Investments, Inc. v. Graham*, 54 Wn. App. 361, 364, 773 P.2d 873 (1989).

No Washington court has addressed the types of damages available to a party claiming tortious interference with a business relationship. However, two Washington cases have referenced the RESTATEMENT (SECOND) OF TORTS § 774A (1965). *See Malarkey Asphalt Co. v. Wyborney*, 62 Wn. App. 495, 513 n.4, 814 P.2d 1219, 821 P.2d 1235 (1991); *Lincor*

8

*Contractors, Ltd. v. Hyskell*, 39 Wn. App. 317, 324, 692 P.2d 903 (1984). RESTATEMENT section 774A provides:

> (1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for
> (a) the pecuniary loss of the benefits of the contract or the prospective relation;
> (b) consequential losses for which the interference is a legal cause; and
> (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

(Boldface omitted.)

Both parties apparently agree that section 774A applies. We also agree and hold that a person establishing tortious interference with a business relationship can recover damages for injury to reputation.[2] *See also Island Air, Inc. v. LaBar*, 18 Wn. App. 129, 145, 566 P.2d 972 (1977) (generally stating that reputation damages are recoverable in appropriate cases for tortious interference with a business relationship).

### 3. Sufficiency of Damages Evidence

It is well established that "damages must be proved with reasonable certainty." *Lewis River Golf, Inc. v. O.M. Scott & Sons*, 120 Wn.2d 712, 717, 845 P.2d 987 (1993). But " 'the doctrine respecting the matter of certainty, properly applied, is concerned more with the fact of damage than with the extent or amount of damage.' " *Lewis River Golf*, 120 Wn.2d at 717 (emphasis omitted) (quoting *Gaasland Co. v. Hyak Lumber & Millwork, Inc.*, 42 Wn.2d 705, 712, 257 P.2d 784 (1953)). In *Lewis River Golf*, our Supreme Court explained:

---

[2] We need not decide whether to adopt the portion of section 774A providing that emotional distress damages are recoverable in a tortious interference with a business relationship claim. Only Gregg Roofing, not its president Tiffany, is a party to this lawsuit. Gregg Roofing is a corporation, and there is no dispute that corporations cannot recover emotional distress damages.

> "[O]nce the [plaintiff] establishes the fact of loss with certainty (by a preponderance of the evidence), uncertainty regarding the amount of loss will not prevent recovery. Thus, a [plaintiff] will not be required to prove an exact amount of damages, and recovery will not be denied because damages are difficult to ascertain. . . . Generally, whether the [plaintiff] has proved his loss with sufficient certainty is a question of fact."

120 Wn.2d at 717-18 (fourth alteration in original) (emphasis omitted) (quoting Roy Anderson, INCIDENTAL AND CONSEQUENTIAL DAMAGES, 7 J.L. & Com. 327, 395–96 (1987)).

However, the fact that the amount of damages need not be proved with precision does not allow a claimant to present *no* evidence regarding the amount. *See Bunch v. King County Dep't of Youth Servs.*, 155 Wn.2d 165, 180, 116 P.3d 381 (2005) ("there must be evidence upon which the award [of damages] is based"). Although the precise amount of damages need not be shown with mathematical certainty, "competent evidence in the record" must support the claimed damages. *Fed. Signal Corp. v. Safety Factors, Inc.*, 125 Wn.2d 413, 443, 886 P.2d 172 (1994) (quoting *Interlake Porsche & Audi, Inc. v. Bucholz*, 45 Wn. App. 502, 510, 728 P.2d 597 (1986)). A claimant has the burden of proof on the amount of damages, and must come forward with sufficient evidence to support a damages award. *O'Brien v. Larson*, 11 Wn. App. 52, 54, 521 P.2d 228 (1974). " 'Evidence of damage is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.' " *Clayton v. Wilson*, 168 Wn.2d 57, 72, 227 P.3d 278 (2010) (quoting *State v. Mark*, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984)).

The amount of damages generally is a question of fact. *Bunch*, 155 Wn.2d at 179. However, an appellate court can overturn an award of damages if it is " 'outside the range of substantial evidence in the record.' " *Bunch*, 155 Wn.2d at 179 (quoting *Bingaman v. Grays Harbor Cmty. Hosp.*, 103 Wn.2d 831, 835, 699 P.2d 1230 (1985)).

10

4. Cases Involving Verdicts for Injury to Reputation

Two Washington cases have addressed jury verdicts awarding damages for injury to reputation: *Lewis River Golf* and *Washington State Physicians Insurance Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993). Although the legal principles addressed in these cases are helpful, neither is dispositive here because of factual differences. However, an unpublished federal district court case applying Washington law – *Experience Hendrix, LLC v. Hendrixlicensing.com, Ltd.*, 2011 WL 4402775 (W.D. Wash. 2011) – contains a discussion of reputation damages that is consistent with our decision.

a. *Lewis River Golf*

In *Lewis River Golf*, a company that grew sod sued its seed supplier after weeds appeared in the sod grown from the seed. 120 Wn.2d at 714. The sod company claimed that it suffered a loss on the sale of its sod business because of injury to its reputation or goodwill resulting from sale of the bad sod. *Lewis River Golf*, 120 Wn.2d at 715. The jury awarded damages for the loss the sod company suffered on the sale of its sod division, but the Court of Appeals reversed. *Lewis River Golf*, 120 Wn.2d at 715.

On appeal to our Supreme Court, the seed company conceded that the sale of the bad sod damaged the sod company's reputation, but argued that the amount of damage was based on speculation. *Lewis River Golf*, 120 Wn.2d at 718-19. Our Supreme Court first noted that as long as the fact of loss is shown, a plaintiff will not be required to prove the exact amount of damages. *Lewis River Golf*, 120 Wn.2d at 717-18. The court discussed the measure of certainty required for proving damage to a business's goodwill:

> "With respect to loss of goodwill, proving damages with reasonable certainty should track the generally expansive recent history of lost profits. However,

11

> unlike lost profits, goodwill relates to the future and, thus, no actual profit base will exist for use at trial. Accordingly, the expert testimony of accountants and economists will prove invaluable to the aggrieved buyer in presenting his claim for loss of goodwill. Such testimony will generally be accepted by the courts in assessing goodwill claims."

*Lewis River Golf,* 120 Wn.2d at 718 (emphasis omitted) (quoting Anderson, 7 J.L. & Com. at 422). Summarizing these principles, the court held that "[d]amage to business reputation and loss of goodwill have to be proved with whatever definiteness and accuracy the facts permit, but no more." *Lewis River Golf,* 120 Wn.2d at 719.

The sod company presented evidence quantifying the amount of injury to its reputation: the testimony of an expert economist who estimated the sod company's loss on the sale of its sod division based on a review of the sod company's financial records. *Lewis River Golf,* 120 Wn.2d at 720. The court determined that the expert's opinions were not so speculative as to be inadmissible. *Lewis River Golf,* 120 Wn.2d at 719-20. The court noted that the testimony of accountants and economists generally will be accepted in projecting goodwill damages. *Lewis River Golf,* 120 Wn.2d at 722. The court indicated that the jury verdict was supported by this evidence, concluding that the Court of Appeals had invaded the province of the jury in reversing the verdict. *Lewis River Golf,* 120 Wn.2d at 724-25.

Unlike here, the sod company in *Lewis River Golf* produced evidence quantifying the amount of damages caused by the injury to its reputation. 120 Wn.2d at 720-22. The court held that such evidence was sufficient to support a jury verdict based on that evidence. *Lewis River Golf,* 120 Wn.2d at 724-25. However, the court did not address whether evidence quantifying the amount of damages was *required* to support a jury verdict for injury to reputation damages.

12

    b.   *Fisons*

In *Fisons*, a physician prescribed a drug that caused permanent brain damage to a child

patient. 122 Wn.2d at 307. The child's parents sued the physician and the drug manufacturer,

and the physician ultimately settled the lawsuit. *Fisons*, 122 Wn.2d at 307. It later was

determined that the drug company knew of the risks associated with prescribing the drug to

children but did not warn physicians of those risks or discontinue production of the drug. *Fisons*,

122 Wn.2d at 307-08. The physician asserted products liability, Consumer Protection Act, and

common law fraud claims against the drug company. *Fisons*, 122 Wn.2d at 309.

At trial, the physician apparently presented no evidence quantifying the amount of

damage to his reputation. Instead, he testified that in his opinion he had suffered a loss to his

reputation in the community, that other physicians were ignoring him, and that he no longer

enjoyed his work. *Fisons*, 122 Wn.2d at 331. He also presented evidence that articles in several

newspapers had reported that his conduct had caused the child's injury. *Fisons*, 122 Wn.2d at

331-32. Based on this evidence, a jury awarded over $1 million in damages for injury to the

physician's professional reputation. *Fisons*, 122 Wn.2d at 309.

Our Supreme Court held that the trial court did not err in refusing to grant a new trial or

reduce the damage award based on the size of the verdict. *Fisons*, 122 Wn.2d at 329. In

addressing whether the verdict was outside the range of substantial evidence in the record, the

court stated, "The rule in Washington on the question of sufficiency of the evidence to prove

damages is that: '[t]he fact of loss must be established with sufficient certainty to provide a

reasonable basis for estimating that loss.' " *Fisons*, 122 Wn.2d at 331 (alteration in original)

(internal quotation marks omitted) (quoting *Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753,

757, 649 P.2d 828 (1982)). The court held that the evidence presented in support of injury to the physician's reputation – the physician's testimony and the newspaper articles – was sufficient to sustain the jury's award for damages to the physician's reputation. *Fisons*, 122 Wn.2d at 332. The court concluded, "Damages for loss of professional reputation are not the type of damages which can be proved with mathematical certainty and are usually best left as a question of fact for the jury." *Fisons*, 122 Wn.2d at 332.

*Fisons* established that an individual physician can recover damages for injury to reputation based on his opinion that he had suffered such damages and how the injury to his reputation made him feel. Based on those facts, the court did not require the physician to produce any evidence that quantified the amount of those damages.[3] However, the court did not address the issue in this case – the type of evidence a *business* must produce to support a damages verdict for injury to its reputation.

    c. *Experience Hendrix*

In *Experience Hendrix,* the court ruled that proof of economic damages is required to support a damages award for harm to a business's reputation. 2011 WL 4402775, at *5-6. Experience Hendrix sued under the Washington Consumer Protection Act for infringement of Jimi Hendrix-related trademarks. *Experience Hendrix*, 2011 WL 4402775, at *1. The jury's special verdict form had separate lines for injury to reputation and injury to goodwill, and during deliberations the jury asked the trial court to define those terms. *Experience Hendrix*, 2011 WL 4402775, at *2. The trial court explained that "reputation and goodwill are essentially the same

---

[3] The court's holding in *Fisons* is consistent with earlier cases involving injury to an individual's reputation. *See Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 529, 554 P.2d 1041 (1976) (no need for evidence assigning a dollar value to the injury to recover for injury to reputation).

thing and are collectively a business's reputation, patronage, and other intangible assets that are considered when appraising a business." *Experience Hendrix*, 2011 WL 4402775, at *2 (internal quotation marks omitted). The jury awarded $750,000 for injury to the company's reputation and $300,000 for injury to goodwill. *Experience Hendrix*, 2011 WL 4402775, at *2.

The court granted the defendant's motion for judgment as a matter of law, concluding that the evidence did not support the jury's awards for injury to reputation and goodwill and the awards were based on speculation. *Experience Hendrix*, 2011 WL 4402775, at *6. The court initially concluded that the definition of reputation and goodwill it provided to the jury was a correct statement of the law because "Washington courts have consistently defined reputation as merely one component of a business's goodwill." *Experience Hendrix*, 2011 WL 4402775, at *5. The court cited *In re Marriage of Ziegler*, 69 Wn. App. 602, 607, 849 P.2d 695 (1993) ("Goodwill represents the expectation of continued patronage based upon such intangibles as location, trade name, *reputation*, organization and established clients." (emphasis added)) and WAC 296-17-31030(3) (defining "goodwill" as "the value of a trade or business based on expected continued customer patronage due to its name, *reputation*, or any other factor" (emphasis added)). The court further held that "business entities do not have reputations per se, but rather have goodwill." *Experience Hendrix*, 2011 WL 4402775, at *5. The court concluded that the jury's award of different amounts for injury to reputation and injury to goodwill was inconsistent with the law and with the court's instructions. *Experience Hendrix*, 2011 WL 4402775, at *5.

The court also addressed whether the damage awards were supported by substantial evidence. In holding that the damages were "based entirely on speculation," the court reasoned:

15

> The jury was provided no evidence from which it could determine the diminution in value, if any, of plaintiffs' goodwill as a result of defendants' violation of the C[onsumer] P[rotection] A[ct]. Plaintiffs proffered no estimate, by way of expert testimony or otherwise, of the value of their goodwill either before or after defendants' wrongful conduct. *See Stewart & Stevenson Servs., Inc. v. Pickard*, 749 F.2d 635, 649 (11th Cir.1984) ("It is axiomatic that the measure of damage to business property, such as goodwill, is based on a measurement of the difference in value of the property before and after the injury."). Indeed, plaintiffs' counsel conceded during discussions concerning the related jury instructions that "[t]here's not a specific number in evidence." Tr. at 23:17–18 (docket no. 159).

*Experience Hendrix*, 2011 WL 4402775 at *5 (alteration in original). The court noted that Washington law provides five different methods for calculating the value of a business's goodwill, but that Experience Hendrix "presented no analytical framework for determining the worth of [its] goodwill, and [it] proffered no evidence from which the jury could have found that the value of [its] goodwill had been diminished in any amount." *Experience Hendrix*, 2011 WL 4402775, at *6.

As in *Experience Hendrix*, Gregg Roofing offered no evidence or even an estimate regarding the amount of damage to its reputation. We agree with the court in *Experience Hendrix* that in the absence of such evidence, the reputation damages the jury awarded could only have been based on speculation.[4]

5.    Evidence Required for a Business's Reputation Damages

We conclude that in order for a business to recover damages for injury to its reputation, it must produce some evidence of quantifiable, economic harm. *Fisons* is distinguishable because

---

[4] Gregg Roofing refers us to *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109,1122 (8th Cir. 1999), where the appellate court upheld a jury verdict for $1.6 million in goodwill damages resulting from false advertising. However, the plaintiff in that case presented evidence that it had lost between $5 million and $10 million in "going-concern" value based on a lost opportunity to create a reputation as the industry leader. *Porous Media*, 173 F.3d at 1122. Gregg Roofing presented no such evidence of economic harm to its business.

16

it involved injury to an *individual's* professional reputation. With regard to reputation, individuals and businesses suffer different types of injury. As the court in *Fisons* impliedly recognized, injuring an individual's professional reputation may involve a "personal" type of harm, such as hurt feelings, humiliation, embarrassment, and loss of self esteem. The court in *Fisons* emphasized that the physician's injury to his reputation resulted in other doctors ignoring him and diminished enjoyment of his medical practice. 122 Wn.2d at 331. This type of personal harm goes beyond economic loss, and necessarily is unquantifiable. Accordingly, the court in *Fisons* properly held that the physician's evidence of harm to his feelings without any attempt to quantify the amount of damages was sufficient to sustain the jury verdict. 122 Wn.2d at 332.

But businesses do not have feelings. Businesses cannot experience humiliation or embarrassment, and they cannot suffer the sting of being ignored by its peers like the physician in *Fisons*. Businesses have no "personal" interests that can be harmed. As a result, the only damages a business can recover for injury to its reputation are economic. If a business has not suffered any financial loss from diminished reputation, it has not been damaged. And by definition economic harm to a business is quantifiable and measureable.

Because injury to a business's reputation necessarily is quantifiable, we hold that in order to recover damages for that injury, a business must provide evidence of some measurable loss. Such loss includes decreased income, diminished value of the business as in *Lewis River Golf*, or a reduction of the business's goodwill as discussed in *Experience Hendrix*. But merely providing testimony that the business's reputation has been injured without evidence quantifying the amount of damages is insufficient for recovery. A business cannot recover unquantified "general" damages for injury to reputation.

17

6. Evidence of Gregg Roofing's Damages

Gregg Roofing concedes that it did not produce any evidence that quantified the injury to its reputation or that provided the jury with a reasonable basis to calculate reputation damages. The only evidence pertaining to injury to Gregg Roofing's business reputation was Tiffany's testimony that its reputation had been harmed and that it had not been asked to bid on certain jobs. Tiffany admitted that he had no evidence regarding the amount of damages. Specifically, he admitted that Gregg Roofing had no evidence to "support any claim of financial loss for damage to [its] reputation." RP at 1667. Gregg Roofing presented no evidence regarding lost income, diminished value of the business, or a decrease in goodwill.

The only evidence Gregg Roofing presented at trial regarding the amount of damage to its reputation was its answer to a 2009 interrogatory stating that it sought $10,000 in reputation damages. But this was nothing more than a conclusory statement prepared by Gregg Roofing's lawyers, unsupported by any actual evidence. At trial Tiffany did not even attempt to quantify the amount of damages.

Gregg Roofing's burden was to present some evidence of the amount of damages caused by the injury to its reputation. But Gregg Roofing admitted at trial that it had no such evidence. Merely "praying" that the jury will figure out the amount of damages without providing any supporting evidence is insufficient. RP at 1673. Accordingly, we hold that Gregg Roofing did not provide the jury with a reasonable basis for estimating its damages, and therefore the $1.5 million award must have been the result of speculation or conjecture.

## B.    REMEDY FOR INSUFFICIENT EVIDENCE

Because we hold that the evidence regarding Gregg Roofing's injury to reputation was insufficient to support the jury's verdict, we must determine the proper remedy. MOE filed post trial motions for judgment as a matter of law under CR 50(a) and alternative motions for a new trial under CR 59 or reduction of the verdict under RCW 4.76.030. We hold that judgment as a matter of law was inappropriate because Gregg Roofing presented some evidence of damages and decline to order a reduction of the jury verdict. We instead hold that a new trial on the issue of damages is the appropriate remedy.

### 1.    Judgment as a Matter of Law – CR 50

CR 50(a)(1) allows judgment as a matter of law if there is *no* basis for a jury's verdict. The rule provides:

> If, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim, counterclaim, cross claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.

CR 50(a)(1). If the trial court denies the motion under CR 50(a)(1) during trial at the close of the evidence, the moving party may renew the motion within 10 days after judgment is entered on the case. CR 50(b). Here, MOE moved for judgment as a matter of law under both CR 50(a)(1) and CR 50(b).

In reviewing the grant or denial of a motion for a judgment as a matter of law we engage in the same inquiry as the trial court, admitting the truth of the nonmoving party's evidence and all reasonable inferences that can be drawn from it. *Faust v. Albertson*, 167 Wn.2d 531, 537, 222 P.3d 1208 (2009). A motion for judgment as a matter of law is proper only when the court

19

can find, as a matter of law, that there was no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party. *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001).

Here, judgment as a matter of law is not the appropriate remedy because Gregg Roofing produced evidence of damages caused by MOE's interference with a contractual relationship sufficient to support a verdict in *some* amount. At a minimum, the evidence supported an award of $530 in lost profits. Gregg Roofing also presented evidence that it had lost additional work as a result of the church incident. This evidence supported an inference that Gregg Roofing would have earned similar profits in these jobs as on the Parkside Church project. MOE notes that if the jury could extrapolate damages from evidence of the value of the church job, consequential damages would be in the range of $9,600. Accordingly, we hold that Gregg Roofing presented sufficient evidence of its lost profits and consequential damages to support an award of some damages in its favor.

The jury was not asked to provide a special verdict allocating damages between lost profits, consequential damages, and injury to reputation. Because there was evidence supporting an award of some economic damages, there is no basis for finding that there was "no legally sufficient evidentiary basis" for a damages award of *any* kind as required for relief under CR 50(a)(1). Therefore, we hold that the trial court did not err when it denied MOE's motion for judgment as a matter of law.

2.    Reduction of the Verdict

The trial court may reduce a jury's damages award as an alternative to a new trial if the award is "so excessive . . . as unmistakably to indicate that the amount thereof must have been

the result of passion or prejudice" if the affected party consents to the reduction. RCW 4.76.030. We review a trial court's denial of a motion for remittitur or reduction of the verdict for abuse of discretion. *Bunch*, 155 Wn.2d at 176.

We also have the authority to reduce a jury's damages award under the doctrine of remittitur and under RCW 4.76.030 if the award is outside the range of substantial evidence in the record, shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice. *Bunch*, 155 Wn.2d at 171-72. However, our Supreme Court has emphasized that appellate courts should rarely exercise this authority. *Bunch*, 155 Wn.2d at 175.

Here, Gregg Roofing presented evidence of lost profits and consequential damages caused by MOE's conduct, which undoubtedly was reflected in some portion of the jury's verdict. Because the jury did not use a special verdict form identifying the amounts and types of damages, we would have difficulty separating the recoverable damages from the unrecoverable general reputation damages. We decline to attempt a remittitur based on the appellate record and hold that the trial court did not abuse its discretion when it also declined to attempt such calculations based on the record before it.

3. New Trial – CR 59(a)

We review a trial court's decision on a motion for a new trial for abuse of discretion. *Collins v. Clark County Fire Dist. No. 5*, 155 Wn. App. 48, 81, 231 P.3d 1211 (2010). CR 59(a)(7) allows the trial court to vacate a jury's verdict and grant the moving party a new trial if the trial court finds that "there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law." Under CR 59(a)(7), a trial court abuses its discretion by denying a motion for a new trial if the verdict is contrary to the evidence.

21

*Palmer v. Jensen*, 132 Wn.2d 193, 198, 937 P.2d 597 (1997). Because we hold that Gregg Roofing's evidence was insufficient to support an award of damages for injury to its reputation, we hold that the trial court abused its discretion in denying MOE's motion for a new trial. Accordingly, we reverse and remand for a new trial.

4.    Scope of New Trial

Gregg Roofing argues that in the event a new trial is ordered, we should limit the new trial to the issue of damages because the jury already has determined that MOE is liable for tortious interference with a business relationship. We agree.

"A new trial may be limited to certain issues where it clearly appears that the original issues were distinct and justice does not require submission of the entire case to the jury." *Mina v. Boise Cascade Corp.*, 104 Wn.2d 696, 707, 710 P.2d 184 (1985). In *Mina*, the court determined that reversal on a liability issue did not require retrial of damages when each party had the opportunity to present evidence on damages, the special verdict form contained separate questions concerning liability and damages, and neither party argued that the amount of damages was inappropriate. 104 Wn.2d at 707-08.

Here, MOE already had a full and fair opportunity to present evidence on scope of employment and liability for intentional interference with a business relationship. The jury completed a special verdict form with separate findings on liability issues and damages. And MOE did not assign error to the jury's liability findings. Accordingly, we order that the new trial be limited to the issue of the amount of damages for MOE's interference with Gregg Roofing's business relationship.

## C.    EVIDENTIARY ISSUES

MOE also challenges two of the trial court's evidentiary rulings. We review a trial court's evidentiary rulings for abuse of discretion. *Cole v. Harveyland*, LLC, 163 Wn. App. 199, 213, 258 P.3d 70 (2011). Therefore, we will overturn the trial court's ruling on the admissibility of evidence only if its decision was manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons. *Gorman v. Pierce County*, 176 Wn. App. 63, 84, 307 P.3d 795 (2013).

### 1.    Evidence of Tiffany's Feelings

MOE argues that the trial court abused its discretion when it overruled MOE's objection to Tiffany's testimony regarding his feelings after repeatedly viewing the uncompleted roofing work on the church. On direct examination, when asked about how he felt about seeing the church with the unrepaired roof on a daily basis when driving through Camas, Tiffany responded, "Not very good" and "we were naturally very upset by it." RP at 1620, 1621. We hold that MOE cannot show that it was prejudiced by the introduction of this evidence and therefore any error in admitting the evidence was harmless.

When a trial court makes an erroneous evidentiary ruling, the question on appeal becomes "whether the error was prejudicial, for error without prejudice is not grounds for reversal." *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983). An error will be considered not prejudicial and harmless unless it affects the outcome of the case. *Brown*, 100 Wn.2d at 196. "[I]mproper admission of evidence constitutes harmless error if the evidence is cumulative or of only minor significance in reference to the evidence as a whole." *Hoskins v. Reich*, 142 Wn. App. 557, 570, 174 P.3d 1250 (2008).

Here, even assuming the evidence of Tiffany's feelings was improperly admitted, his responses were brief and lacking detail. Moreover, his response that he was "upset" by seeing the unfinished roof was coupled with an explanation regarding the negative effect on Gregg Roofing's business, which was relevant to show injury to the business's reputation. RP at 1621. Accordingly, we hold that Gregg Roofing cannot show that it was prejudiced by the admission of testimony regarding Tiffany's feelings.

2.    Evidence of Chill's Fraud

MOE argues that the trial court abused its discretion when it excluded evidence of Chill's fraud conviction and his relationship with Lowrie. It argues that this evidence was relevant to its defense that Lowrie was acting outside the scope of his employment at the time he caused the church to breach its contract with Gregg Roofing, and that the probative value of the evidence outweighed the danger of unfair prejudice. We disagree.

a.    ER 401, 402, and 403

Only relevant evidence is admissible. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The threshold to admit relevant evidence is low; even minimally relevant evidence is admissible. *Kappelman v. Lutz*, 167 Wn.2d 1, 9, 217 P.3d 286 (2009). However, under ER 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

One issue at trial was whether Lowrie was acting within the scope of his employment with MOE when he convinced the church to fire Gregg Roofing. "A master is liable for the acts

24

of a servant committed within the scope or course of his or her employment." *Bratton v. Calkins*, 73 Wn. App. 492, 498, 870 P.2d 981 (1994). However, if the servant "steps aside from the master's business in order to effect some purpose of his own, the master is not liable." *Kuehn v. White*, 24 Wn. App. 274, 277, 600 P.2d 679 (1979). The test is " 'whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or . . . whether he was engaged at the time in the furtherance of the employer's interest.' " *Dickinson v. Edwards*, 105 Wn.2d 457, 467, 716 P.2d 814 (1986) (emphasis omitted) (quoting *Elder v. Cisco Constr. Co.*, 52 Wn.2d 241, 245, 324 P.2d 1082 (1958)). Therefore, the evidence of Chill's fraud conviction and his relationship with Lowrie was relevant to the scope of employment issue.

But a trial court can exclude relevant evidence under ER 403. MOE argues that the evidence regarding Chill's fraudulent conduct and fraud conviction was highly probative because "the fact that an employee is engaged in defrauding his employer destroys vicarious liability under Washington law." Br. of Appellant at 46. MOE's argument is too broad. Neither the fact that a servant's predominant motive is to benefit himself or a third person nor the fact that the servant's actions were contrary to the master's policy necessarily absolves the master from liability. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 53-54, 59 P.3d 611 (2002); *Smith v. Leber*, 34 Wn.2d 611, 623, 209 P.2d 297 (1949); *Carmin v. Port of Seattle*, 10 Wn.2d 139, 154, 116 P.2d 338 (1941).

Moreover, the trial court's ruling did not result in the exclusion of all evidence related to Lowrie's fraudulent conduct. Instead, it excluded only the minimally probative evidence related to Chill's fraud conviction. MOE's offer of proof included Chill's information and plea

agreement for the fraud conviction and a witness who would have testified as to the connection between Chill and Lowry. Although MOE argues that the trial court's ruling prevented it from introducing evidence critical to its defense, the ruling merely prohibited the introduction of a third party's criminal acts. And although one of the trial court's rulings excluded evidence of "any fraud", the offer of proof only involved Chill's fraud, not Lowrie's. When compared to the risk of confusing the jury with evidence of a third party's criminal conviction unrelated to any of the claims at issue in the severed case against Gregg Roofing, we hold that the trial court did not abuse its discretion when it excluded the evidence under ER 403.

  b. Harmless Error

Even if the trial court abused its discretion by excluding evidence of Chill's fraudulent conduct, any error was harmless. Because MOE was permitted to introduce other, more relevant evidence of Lowrie's misconduct, the evidence specifically related to Chill was cumulative. Exclusion of cumulative evidence is not reversible error. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 169-70, 876 P.2d 435 (1994). "The evidence need not be identical to that which is admitted; instead, harmless error, if error at all, results where evidence is excluded which is, in substance, the same as other evidence which is admitted." *Havens*, 124 Wn.2d at 170.

MOE argues that the evidence of Chill's fraud conviction and his relationship with Lowrie was important to show that Lowrie was "willfully acting contrary to the best interests of MOE" and that he interfered with the contract for his own benefit. Br. of Appellant at 45 (internal quotation marks omitted). However, at trial, there was testimony elicited by both parties and from multiple witnesses that Lowrie directed the church to hire CPR in exchange for gifts and financial favors from Chill and that Lowrie told the church to fire Gregg Roofing for

26

his own personal benefit. There also was evidence that this behavior was contrary to MOE's interests and against company policy. For example, the vice president of claims for MOE testified that she would have fired Lowrie had she known he was taking money from Chill and CPR because it was a violation of MOE's core values regarding company ethics.

We hold that the evidence of Chill's fraud conviction and his relationship with Lowrie was substantively similar to the extensive evidence of Lowrie's fraud and the fact that it was contrary to MOE's interests and policies. Therefore, we hold that even if the trial court abused its discretion by excluding the evidence, any error was harmless because the evidence was cumulative. *See Havens*, 124 Wn.2d at 170.

D.    CONDITIONAL CROSS APPEAL

Gregg Roofing filed a cross appeal in the event we remand for a new trial. Gregg Roofing argues that the trial court erred in failing to give proposed jury instruction 19, authorizing recovery for injury to reputation on an interference with a business relationship claim.[5] Gregg Roofing argues that on remand we should order the trial court to accept this proposed instruction.

Proposed instruction 19 provided, "Damages for tortious interference may include economic loss as well as damages for mental distress, discomfort, inconvenience, injury to reputation, humiliation, and consequential damages. Certainty of proof as to future opportunities and profits is not required." CP at 171-72. The instruction on injury to reputation and

---

[5] Gregg Roofing also argues that the trial court erred in refusing to allow Gregg Roofing to amend its counterclaim to assert a claim against MOE for negligent supervision of Lowrie. However, because we are limiting the new trial to the damages issue, we need not address this issue. MOE's liability will not be at issue on retrial, and there is no indication that a negligent supervision claim allows different damages than an interference with a business relationship claim.

No. 42940-3-II

consequential damages is appropriate, but the trial court did not abuse its discretion in refusing the instruction because it also authorized damages for "mental distress, discomfort, inconvenience [and] humiliation." CP at 172. A business cannot recover these types of "personal" damages for a tortious interference with a business relationship claim. On remand, we direct the trial court to instruct the jury on damages for injury to reputation consistent with this opinion.

We reverse and remand for a new trial on the issue of damages only.

MAXA, J.

We concur:

PENOYAR, P.J.

SPEARMAN, J.

28