FILED

March 17 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0152

DA 14-0152

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 82

VICTORY INSURANCE COMPANY, INC.,

Plaintiff and Appellant,

v.

MONTANA STATE FUND, LIBERTY NORTHWEST INSURANCE CORPORATION, PAYNE FINANCIAL GROUP, INC., WESTERN STATES INSURANCE AGENCY, INC., A Western States Company, and JOHN DOES 1-100,[1]

Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 2011-284
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Linda M. Deola, Scott Peterson, Morrison, Sherwood, Wilson & Deola, PLLP, Helena, Montana

For Appellees:

W. Anderson Forsythe, George T. Kimmet, Moulton Bellingham, PC, Billings, Montana
(*Attorneys for Montana State Fund*)

John E. Bohyer, Esq., Erin M. Erickson, Esq., Bohyer, Erickson, Beaudette & Tranel, PC, Missoula, Montana
(*Attorneys for Liberty Northwest Insurance Corp.*)

Randy J. Cox, Thomas J. Leonard, Boone Karlberg, P.C., Missoula, Montana
(*Attorneys for Payne Financial Group, Inc.*)

---

[1] No John Does are active in this appeal.

Michael F. McMahon, Stefan T. Wall, Denny K. Palmer, McMahon, Wall & Hubley, PLLC, Helena, Montana
(*Attorneys for Western States Insurance Agency, Inc.*)

For Amicus Curiae:

Lawrence A. Anderson, Attorney at Law, P.C., Helena, Montana
(*Attorney for Montana Trial Lawyers Association*)

Submitted on Briefs:  January 28, 2015
Decided:  March 17, 2015

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Victory Insurance Company appeals from orders of the First Judicial District Court, Lewis and Clark County, dismissing its common law cause of action against Defendants brought under the Unfair Trade Practices Act (UTPA), and entering summary judgment for Defendants on its cause of action for intentional interference with prospective economic advantage. We affirm.

## ISSUES

¶2 Victory presents two issues on appeal: (1) whether the District Court erred in dismissing Victory's UTPA cause of action; and (2) whether the District Court erred in granting summary judgment in favor of Defendants.

¶3 As addressed below, we conclude it is not necessary for us to determine whether the District Court erred in rejecting Victory's request for relief "under a common law UTPA action," as we conclude that Victory's inability to establish damages is fatal to its claims for intentional interference with prospective economic advantage and would be fatal as well to any UTPA-related claim.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The plaintiff and defendants in this case are competitors in the workers compensation industry. Plaintiff Victory Insurance is a Montana corporation located in Miles City, Montana, and began its operation in 2007. It sells workers' compensation insurance directly to business employers without the use of insurance agencies for sales or claims adjustments. Defendant Montana State Fund (State Fund) is an organization that sells workers' compensation insurance through in-house and out-of-house agents.

3

Defendants Liberty Northwest (Liberty), Payne Financial Group (Payne), and Western States Insurance (WSI) also sell workers' compensation insurance, including State Fund policies.

¶5 Victory's growth rate failed to meet ownership's expectations and Victory concluded that its business was being harmed by a "barrage of falsehoods" being told by representatives of the Defendants to prospective customers about Victory. In March 2011, Victory filed an Amended Complaint against the Defendants (and other subsequently-dismissed parties who are not a part of this appeal), alleging that they had made derogatory comments to prospective customers about Victory and its leadership and financial condition, in an effort to dissuade those customers from purchasing insurance from Victory. The insurer asserted that such tactics (1) violated multiple provisions of the UTPA; and (2) intentionally interfered with prospective economic advantage and with a business contract. Victory sought punitive damages as well as actual, economic, special and compensatory damages and pre- and post-judgment interest. Victory subsequently moved to dismiss without prejudice its claim pertaining to interference with a business contract. The District Court granted the motion and that ruling is not appealed.

¶6 Each Defendant promptly moved for dismissal of Victory's claim under the UTPA, and on September 22, 2011, the District Court granted the Defendants' motions holding that the UTPA does not create a private right of action by one insurance company against another. This ruling left pending Victory's claim for interference with prospective economic advantage.

4

¶7 During lengthy discovery with respect to the remaining claim, the Defendants asked Victory to identify those prospective clients to which Defendants' representatives were alleged to have maligned Victory or interfered in some fashion. Victory identified a total of 51 companies. Victory claimed that State Fund had denigrated Victory to five companies, Liberty had done so with nine companies, and Payne and WSI had done so with 13 and 24 companies respectively.

¶8 Subsequently, between May 2013 and October 2013, all Defendants filed motions for summary judgment asserting that Victory had failed to establish damages as a result of the Defendants' alleged actions—an element required in order to prevail in an intentional interference case. Each Defendant, in support of its summary judgment motion, presented detailed evidence pertaining to its business relationship with each company Victory had identified during discovery. The evidence supported Defendants' argument that Victory had failed to establish damages. Referencing this evidence, the District Court issued a lengthy and thorough order granting the Defendants' motions for summary judgment.

¶9 Victory appeals the dismissal of its UTPA claim and the District Court's grant of summary judgment with respect to interference with prospective economic advantage.

**STANDARD OF REVIEW**

¶10 We review a district court's summary judgment ruling de novo, applying the same rule, M. R. Civ. P. 56(c)(3), that a district court does when making a summary judgment ruling. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

5

any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3); *Bennett v. Hill*, 2015 MT 30, ¶ 9, 378 Mont. 141, 342 P.3d 691 (citations omitted).

¶11 We review a district court's ruling on a motion to dismiss under the standards set forth in M. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. A district court's determination that a complaint has failed to state a claim for which relief can be granted is a conclusion of law which we review for correctness. *Scheafer v. Safeco Ins. Co.*, 2014 MT 73, ¶ 14, 374 Mont. 278, 320 P.3d 967 (citation omitted).

## DISCUSSION

¶12 *Did the District Court err in dismissing Victory's UTPA claims and in granting Defendants' motions for summary judgment?*

¶13 Victory argues that the District Court erred in concluding that Defendants did not intentionally interfere with Victory's prospective economic advantage. It relies upon *Maloney v. Home & Inv. Ctr., Inc.*, 2000 MT 34, ¶ 41, 298 Mont. 213, 994 P.2d 1124, in which we set forth the four elements of intentional interference with prospective economic advantage. Such acts: (1) are intentional and willful; (2) are calculated to cause damage to the plaintiff's business; (3) are done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) result in actual damages or loss. See also Restatement (Second) of Torts § 767.

6

¶14   The intentional interference elements are framed in the conjunctive; therefore, all four elements must be met before Victory can prevail.  Victory claims that all four elements were satisfied but the court's errors led it to conclude elements three and four were not met.  As element four, damages, is dispositive in this case, we focus our analysis on the requirement that Victory prove that it suffered "actual damages or loss" as a result of Defendants' alleged misconduct.

¶15   Victory's claim of damages has been somewhat of a moving target during the District Court proceedings.   At times, Victory appeared to claim that it suffered out-of-pocket damages as a result of lost revenues from the loss of one or more particular contracts.  At other times, Victory acknowledged that it had no out-of-pocket damages when the prospective customer actually chose to contract with Victory despite any alleged attempts by Defendants to dissuade them.  Still at other times, Victory alleged it suffered "general damages," in the form of damages to its reputation.  Victory frequently linked its claim for reputational damages with the statutory standards, trade practices, and industry rules underlying the UTPA.

¶16   All Defendants approached the process of proving that Victory had failed to establish actual damages using a similar method.  Each Defendant referenced the prospective customers with whom Victory claimed it had interfered, and presented specific details of the Defendant's transactions with those companies.  For example, Payne, referencing each of the 13 prospective clients with which it had allegedly interfered, presented detailed evidence to the District Court concerning comments made or discussions had between Payne representatives and the company representatives.

Payne also submitted affidavits of representatives from those companies who swore that Payne employees did not engage in the alleged misconduct.

¶17 By way of example, one such company, Econo Print, Inc., through its president and its bookkeeper/accountant, testified that no one at Payne "relayed derogatory information or comments" to Econo Print regarding Victory. The affiants further testified that the company chose not to use Victory after conducting its own independent research and concluding the company was too new and unknown, and appeared to have lesser financial reserves than Econo Print desired.

¶18 The company representatives of another identified company, Malta Ready Mix, testified that Malta decided not to switch to Victory because it learned through its Payne agent that Malta's umbrella insurer would not issue coverage over a Victory policy. After confirming this with both the umbrella carrier and Victory, Malta declined to obtain coverage through Victory at that time. As another example, an Energy Laboratories, Inc., representative stated in her deposition that the company's reason for not choosing Victory to provide its coverage was that Victory did not have the insurance rating that Energy required.

¶19 Payne presented similar evidence for each of the remaining 10 companies, establishing that Victory had suffered no identifiable economic damages as a result of Payne's relationship, comments, or discussions with these 13 companies.

¶20 This pattern of evidence presentation was repeated by the remaining Defendants. State Fund, referencing the five Victory-identified customers with which it was accused of interfering, asserts Victory incurred no damages because Victory actually won the

business of four of these customers away from State Fund.  By taking clients from State Fund, Victory benefitted rather than suffered damages.  As for the last company, State Fund presented an affidavit from the owner of the company that he had not heard any derogatory comments or other statements from any insurance company that dissuaded him from buying insurance from Victory.

¶21    Similarly, Liberty and WSI both detailed their transactions with the companies Victory identified, and refuted the allegations of damage by Victory with strong testimonial evidence.  The District Court recited in its detailed Order on Motions for Summary Judgment the rationale for each company's decision to enter or not to enter into a business relationship with Victory.  Based upon the record and the evidence presented, the District Court concluded that Victory failed to advance any evidence of actual financial loss resulting from a lost contract or business opportunity resulting from Defendants' conduct.  Having reviewed the record, we conclude that it fully supports the District Court's decision.

¶22    Victory argues on appeal that issues of fact preclude summary judgment on its claim for reputational damage, and further argues that this Court can infer actual damage by virtue of some derogatory comments having been made.  We do not infer or presume actual damage to a reputation based exclusively on a plaintiff's argument that a defendant made disparaging comments to a prospective client.  While exact damages are not required, damages nonetheless must be established by substantial evidence and not be the product of guess and speculation. *Lenz Constr. Co. v. Cameron*, 207 Mont. 506, 511, 674 P.2d 1101, 1103 (1984).  We noted in *Cremer v. Cremer Rodeo Land*, 192 Mont. 208,

627 P.2d 1199 (1981), that Cremer had established the existence of substantial damages in her land claim against Cremer Rodeo and had quantified the damages in a reasonable manner. We explained that "[r]ecovery of damages will not be denied, even if the mathematical precision of the figure is challenged, provided the evidence is sufficient to afford a reasonable basis for determining the specific amount awarded." *Cremer*, 192 Mont. at 214, 627 P.2d at 1202. Here, Victory has given us no basis upon which to attempt to quantify a damage award.

¶23 This Court has not addressed previously the quantum of evidence required for a business to recover reputational damages under a claim for interference with prospective economic advantage. Therefore, we take guidance from the recent case of *Mut. Of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 315 P.3d 1143 (Wa. App. 2013), which addresses this precise question. In *Enumclaw*, a roofing contractor was fired, mid-job, by its church client, at the recommendation of the church's insurance company. Gregg Roofing had removed the church roof and installed a temporary roof when an unexpected storm occurred and caused major damage to the interior of the church. The church filed a claim with Enumclaw. Enumclaw suggested hiring another roofer which the church did, and then Enumclaw, on behalf of its insured church, sued Gregg Roofing for breach of contract. Gregg counterclaimed that Enumclaw tortiously interfered with its business relationship with the church and sought reputational damages. *Enumclaw*, 315 P.3d at 1146-47.

¶24 The Washington court carefully reviewed the evidence Gregg presented but concluded that Gregg's "burden was to present some evidence of the amount of damages

10

caused by the injury to its reputation." *Enumclaw*, 315 P.3d at 1154. The court observed that "in order for a business to recover damages for injury to its reputation, it must produce some evidence of quantifiable, economic harm. . . . With regard to reputation, individuals and businesses suffer different types of injury . . . injuring an individual's professional reputation may involve a 'personal' type of harm, such as hurt feelings, humiliation, embarrassment, and loss of self esteem." *Enumclaw*, 315 P.3d at 1153. Such personal injury does not occur with businesses; consequently, "the only damages a business can recover for injury to its reputation is economic. If a business has not suffered any financial loss from diminished reputation, it has not been damaged. And by definition economic harm to a business is quantifiable and measurable." *Enumclaw*, 315 P.3d at 1153. The court identified such potentially quantifiable losses as decreased income, diminished value of the business according to the business's trade industry, or a known reduction of the business's goodwill. "But merely providing testimony that the business's reputation has been injured without evidence quantifying the amount of damages is insufficient for recovery. A business cannot recover unquantified 'general' damages for injury to reputation." *Enumclaw*, 315 P.3d at 1154.

¶25 Victory claimed throughout discovery that it had suffered reputational damages but despite extensive discovery, it never identified or quantified any "actual damages or loss." The absence of such damages is fatal to Victory's intentional interference claim. Likewise, we conclude that even had the District Court permitted Victory to pursue a "common law UTPA claim" under § 33-18-302, MCA, (precluding the dissemination or publication of statements which are maliciously critical of or derogatory to the financial

11

condition of an insurer), the establishment of quantifiable damages would still have been required. In this connection, we reject Victory's argument that in cases of defamation per se, proof of actual damages is not required because defamation causes obvious damage on its face. For this proposition, it cites *Manley v. Harer*, 73 Mont. 253, 259, 235 P. 757, 759 (1925), *Fauver v. Wilkoske*, 123 Mont. 228, 233, 211 P.2d 420, 423 (1949), and *McCusker v. Roberts*, 152 Mont. 513, 523-24, 452 P.2d 408, 414 (1969). However, these cases are not of assistance to Victory for two reasons. First, these cases address defamatory remarks made with respect to an *individual* as opposed to a business. As noted above, a business cannot recover unquantified general damages for injury to its reputation. *Enumclaw*, 315 P.3d at 1154. Second, Victory has not in any event set forth a claim for defamation. In sum, proof of quantifiable damages would be a prerequisite even if Victory had been permitted to pursue recovery under the UTPA.

¶26 Victory asserts that this case should not have been decided on summary judgment because a factual dispute over the existence of damages remained. Victory claims that an expert disclosure it filed with the District Court shortly before the October 17, 2013 summary judgment hearing established a material and factual dispute as to damages, thereby precluding a ruling on summary judgment. In the disclosure, Victory asserted that the Defendants' misconduct damaged Victory's business reputation. The disclosure set forth topics its expert intended to address at trial such as insurance ratings and re-insurance agreements. However, despite the fact that the absence of damages was the basis for the summary judgment motions, the expert did not set forth any evidence of damages so as to defeat summary judgment, as M. R. Civ. P. 56(e)(2) required it to do.

12

Moreover, as Payne notes, Victory's last-minute "expert disclosure" was not in affidavit form and was not submitted as part of the summary judgment record.

¶27 It is well-established that "[i]n order to defeat a motion for summary judgment properly made and supported, the opposing party must set out specific facts showing a genuine issue for trial by affidavits or as otherwise provided by Rule 56. M. R. Civ. P. 56(e)(2)." *Malpeli v. State*, 2012 MT 181, ¶ 12, 366 Mont. 69, 285 P. 3d 509. While a court considering summary judgment must view the evidence in a light most favorable to the non-moving party and all reasonable inferences are to be drawn in favor of the party opposing summary judgment, "if a defendant establishes the absence of a genuine issue of material fact as to one of the elements constituting the cause of action, and the plaintiff fails to come forward with proof showing the existence of a genuine issue as to that element, summary judgment in the defendant's favor is proper." *State Med. Oxygen v. Am. Med. Oxygen*, 267 Mont. 340, 344, 883 P.2d 1241, 1243 (1994). The parties had been undergoing extensive discovery for two years by the time the October 17, 2013 summary judgment hearing commenced. Facing summary judgment, it was incumbent on Victory to present admissible evidence of identifiable and quantifiable damages. Victory's expert disclosure lacked the specificity needed to establish a genuine issue for trial as to damages and its promise of future trial testimony on damages was wholly inadequate to defeat summary judgment.

¶28 The District Court appropriately decided this case on summary judgment and did not err when it granted each Defendant's motion on the ground that Victory did not establish the existence of quantifiable damages so as to avoid summary judgment. We

13

further conclude that in light of Victory's inability to establish damages, there is no need for this Court to determine whether a common-law UTPA claim should have been permitted.

¶29     Affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE