[No. 57924-5.   En Banc.   April 23, 1992.]

ROBERT B. COLWELL, ET AL, *Appellants,* v. PETER W. EISING, ET AL, *Respondents.*

*Joseph D. Holmes, Jr.,* and *Gregory C. Sisk* (of *Karr Tuttle Campbell*), for appellants.

*John O. Burgess* and *John H. Strasburger* (of *Short, Cressman & Burgess*), for respondents.

BRACHTENBACH, J. — The plaintiffs and defendant were the general partners in a limited partnership. The limited partnership purchased, managed and eventually sold its sole asset, a commercial office building, the Seattle Tower, formerly the Northern Life Tower (the Tower).

Plaintiffs, as general partners, sued defendant, the third general partner, for two-thirds of management fees paid by the limited partnership. The trial court granted summary judgment to defendant on the basis that the action was barred by the statute of limitations and laches. We affirm on the statute of limitations and do not reach the issue of laches.

A brief review of undisputed facts is necessary to frame the issues. The limited partnership purchased the Tower in

1967; plaintiffs were the general partners as well as limited partners. Defendant was then a limited partner, but not a general partner. In 1974 defendant became a general partner. The plaintiffs and defendant, as the only general partners, were to be paid for their management services according to a formula contained in the amended limited partnership agreement. The relevant paragraph is set out in the footnote.[1] The critical provision states: "In consideration of their special services hereunder, said general partners [plaintiffs and defendant] shall jointly receive compensation as follows". Clerk's Papers, at 519. There follows a formula providing for a percentage of the gross income of the Tower and a percentage of gross rentals from new leases and a lesser percentage of gross rentals from renewals or extensions of leases.

This dispute is over compensation for management services, calculated pursuant to the above formula. It is critical to note what is not involved here. There is no argument about the amounts due from and paid by the limited partnership to the general partners. The limited partnership is

---

[1]"B. Paragraph 9.5 of the agreement of limited partnership is hereby amended to read as follows:

"In consideration of their special services hereunder, said general partners shall jointly receive compensation as follows:

"(a) A sum equal to five percent (5%) of the gross income of the property described in the real estate contract mentioned in paragraph 6 hereof and from any other investment acquired by the partnership;

"(b) For any new lease, a sum equal to three percent (3%) of gross rentals to be received under the lease; and

"(c) For any renewal or extension of lease, a sum equal to one and one-half percent (1-½%) of gross rentals to be received under the lease; provided that to the extent that any existing tenant acquires additional space and pays additional rental, gross rentals received for such additional space shall be deemed to be gross rentals received under a new lease and said general partners shall be entitled to receive as compensation three percent (3%) of such gross additional rentals.

"Said compensation shall include, and the general partners shall not otherwise be reimbursed or compensated for, their travel expenses. All other expenses, including bookkeeping and fees of certified public accountants, attorneys fees, and commissions paid to independent real estate brokers shall be paid by the partnership." Clerk's Papers, at 519-20.

not a party. The limited partnership has been dissolved and its assets distributed. This controversy concerns only the division among the general partners of the management fees paid pursuant to the limited partnership agreement to the general partners in the years 1978 through 1986.

Referring to the quoted provision of the limited partnership agreement, so far as that agreement provides, the management fees are to be received *jointly* by the general partners. It is the division between plaintiffs and defendant of those fees for the years 1978 through 1986 that is the heart of this case. Plaintiffs each claim one-third of those fees, leaving one-third for defendant.

Again it is essential to establish what is not at issue. Plaintiffs do not claim any oral or written agreement between themselves and defendant as to division of the management fees for the years in question. Plaintiffs do not allege that they and defendant were themselves partners in providing management. That is, plaintiffs do not assert that the three general partners were partners among and between themselves in managing the Tower. Plaintiffs admit that:

> arrangements for less than equal ⅓ splits until 1975 were based on written or oral agreements among Colwell, Dunn and Eising. There is a dispute over whether such agreements continued in effect in 1976 and 1977, but *there were no written or oral agreements among them after July 31, 1977 except the amended limited partnership agreement.*

(Italics ours.) Clerk's Papers, at 14.

We now turn to the undisputed facts which led to this litigation. When defendant became a general partner in 1974 he took over major responsibilities for management of the Tower. During the years 1974 and 1975 plaintiffs and defendant did not divide equally the management fees. This plaintiffs admit as noted above. There is a dispute whether there was an oral agreement for division in 1976 and 1977, but after 1977 there is no question that defendant provided all the management services; defendant then claimed and received all the management fees for all years until dissolution in 1986.

Thus, the dispute over division of management fees existed as a fact in 1977. Plaintiffs admit they and defendant were in "total and consistent disagreement for over nine years". Clerk's Papers, at 16. In fact, in 1978, almost 10 years before suit, plaintiffs' attorneys demanded plaintiffs' claimed share of management fees and stated unequivocally that division of such fees "will be the subject of litigation if Mr. Eising [defendant] continues to withhold the management income and refuse[s], despite the demands that have been asserted, to distribute this income to Messrs. Dunn and Colwell." Clerk's Papers (Affidavit of Henry W. Dean), at 330.

Plaintiffs' complaint alleges their virtual ouster from the partnership in 1977:

> 9. Commencing in 1977, Eising attempted to have the Plaintiffs removed from the partnership, refused to involve the Plaintiffs in the duties and overall responsibilities of the general partners and failed and refused to share with them any of the compensation to be paid for special services.

Clerk's Papers, at 3-4.

These facts lead to the obvious question whether plaintiffs' claims are barred by the statute of limitations. If plaintiffs' claims accrued in 1977, or at the latest in 1978, is this action barred because it was not commenced until 1988? For purposes of analysis we assume that the applicable statute is RCW 4.16.040(1), limiting an action upon a written contract to 6 years from accrual. Because plaintiffs do not claim that there was any oral or written agreement, except the limited partnership agreement, they necessarily claim that this is an action on a written contract. Defendant disputes this theory.

To avoid the statute of limitations, plaintiffs advance two interrelated theories. First, they contend this is a suit for a partnership accounting, and second, pursuant to RCW 25.04.430,[2] such an action for an accounting does not accrue until dissolution.

---

[2] RCW 25.04.430 is part of the Uniform [general] Partnership Act, but is applicable to limited partnerships pursuant to RCW 25.10.660.

First, there is a serious question whether this is an action for a partnership accounting. A partnership accounting generally involves a determination of partnership assets and their valuation, partnership liabilities, partnership profits, and partners' contributions and withdrawals. Such accounting may raise questions about partners' debts, or advances, issues of goodwill and dates of valuation. 59A Am. Jur. 2d *Partnership* §§ 971-1022 (1987). None of those issues is present. This is simply a contract dispute over the division of management fees which coincidentally were due from and paid by a limited partnership. The limited partnership is not a party.

Plaintiffs do not allege any dispute about the amount in issue. Indeed, they allege to the penny the amount claimed, *i.e.*, each claims $282,167.30. Plaintiffs knew these exact amounts each year, starting in 1974. These amounts are itemized by plaintiffs by (a) month, (b) amount for each of the three categories of management fees, and (c) totals for each year from 1974 through 1986. Clerk's Papers, at 49-55. Plaintiffs even claim these amounts were liquidated as of the dates those specific funds were received by defendant. Clerk's Papers, at 4.

In short, an "accounting" of the affairs of the limited partnership appears entirely unnecessary to resolve this dispute. It is elementary that we must examine

> the nature of the right sued upon, [it is] not the form of action or the relief demanded, [which] determines the applicability of the statute of limitations. The accounting is merely ancillary to the perfection of plaintiff's right under the oral contract, and that aspect of the action should not operate to avoid the effect of a statute prescribing a period of limitation with respect to the right basically in issue.

(Citations omitted.) *Jefferson v. J.E. French Co.*, 54 Cal. 2d 717, 718-19, 355 P.2d 643, 7 Cal. Rptr. 899 (1960).

However, we do not rest our decision upon a determination of what is an action for a partnership accounting. Rather, we rely solely upon the inapplicability of RCW 25.04.430 which plaintiffs rely upon to determine the time of accrual of their action. Throughout their briefs, plaintiffs

assert that this cause of action did not accrue, because of RCW 25.04.430, until dissolution of the limited partnership. Brief of Appellant, at 4, 22, 24, 26, 28, 34, 36, 42, 50. Reply Brief of Appellant, at 3, 5, 8-9, 12-13, 20-21, 28.

■ Plaintiffs overlook the precise language of RCW 25.04.430.[3] They neglect to note what it is that accrues under RCW 25.04.430. By the exact language of the statute it is the right of a partner to an accounting of his *interest* which accrues. What is the *interest* for which the right to an accounting accrues at the date of dissolution?

The statute provides the answer. Under the limited partnership statute a partner's interest is his "share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets." RCW 25.10-.010(10). Clearly this applies to plaintiffs as general partners because RCW 25.10.010(8) defines "partner" as a "limited or general partner."

Plaintiffs do not seek a share of the profits or distribution of the assets of the limited partnership. Plaintiffs' claims are not related to the profits of the limited partnership. Rather they seek division of management fees paid pursuant to a completed, uncontested contractual obligation of the limited partnership. The profits of the limited partnership are irrelevant to the "accounting" which they claim. Plaintiffs have received their share of the assets of the limited partnership. Plaintiff Colwell received $1,128,792.53; plaintiff Dunn received $1,029,192.67.

Therefore, RCW 25.04.430 did not delay accrual of plaintiffs' cause of action until dissolution.

■ We conclude that plaintiffs' cause of action accrued in 1978, at the latest, and is barred by the 6-year statute of limitations, which we have assumed to be the applicable period.

---

[3]"The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary." RCW 25.04.430.

We reject plaintiffs' argument that defendant's actions in 1977 and 1978 were equivocal and did not evidence a clear breach which started the statute of limitations. Defendant stated his intention in no uncertain terms when he advised plaintiffs, in writing, that he would not accrue any management fees to them, effective January 1, 1978. Clerk's Papers, at 636. Plaintiffs well understood at that time that their cause of action had accrued because their attorneys unequivocally threatened litigation if defendant "continues to withhold the management income and refuse[s], despite the demands that have been asserted, to distribute this income to Messrs. Dunn and Colwell." Clerk's Papers, at 330.

Further evidence of the complete repudiation and breach comes from plaintiffs themselves. In their motion for summary judgment they set forth facts which they state are undisputed or which they will accept as true for purposes of their motion. Clerk's Papers, at 7. They state as facts: (1) commencing in 1978, defendant refused, over their continued objections, to pay them any of the general partners' compensation, but retained 100 percent for himself; (2) that plaintiffs and defendant were in total and consistent disagreement for over 9 years; (3) "[n]othing that has been said or done by any one of the three general partners constitutes the basis for a conclusion or determination that that amended partnership agreement has been changed by another agreement after 1977." Clerk's Papers, at 14, 16.

Further, as noted above, plaintiffs' complaint alleges that

[c]ommencing in 1977, Eising attempted to have the Plaintiffs removed from the partnership, refused to involve the Plaintiffs in the duties and overall responsibilities of the general partners and failed and refused to share with them any of the compensation to be paid for special services.

Clerk's Papers, at 3-4.

The basic premise is that a cause of action accrues when a party has a right to seek relief in the courts. *Lybecker v. United Pac. Ins. Co.*, 67 Wn.2d 11, 15, 406 P.2d 945 (1965); *U.S. Oil & Ref. Co. v. Department of Ecology*, 96 Wn.2d 85, 91, 633 P.2d 1329 (1981). There are instances where the

injured party may have an election whether to sue upon an anticipatory breach or await continuing performance. See, for example, *Algona v. Pacific*, 35 Wn. App. 517, 522, 667 P.2d 1124, *review denied*, 100 Wn.2d 1028 (1983), upon which plaintiffs rely heavily. This is not one of those instances. *Algona* cited Restatement of Contracts § 322, comment *a* (1932). The comment reasons that electing not to treat a repudiation as final is advantageous to the wrongdoer since he is given an opportunity to nullify the effect of repudiation. That rationale cannot prevail here.[4]

Defendant's breach, if it be such, was final and complete. Plaintiffs recognized it as such by their threat of litigation. Here they pleaded defendant's exclusion of them from partnership affairs.

Plaintiffs had the right to seek redress when defendant told them, in 1978, that he would not pay them any share of the management fees. Their right accrued as a matter of contract law in 1978, at the latest. *Cf.* RCW 25.04.220. Defendant's total repudiation was the event which caused accrual. *Zuhn v. Horst*, 100 Wash. 359, 366, 170 P. 1033 (1918), *overruled on other grounds in Strong v. Sunset Copper Co.*, 9 Wn.2d 214, 226, 114 P.2d 526, 135 A.L.R. 423 (1941).

Judgment is affirmed.

DORE, C.J., and DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

Reconsideration denied May 28, 1992.

---

[4]Plaintiffs fail to disclose that section 322 of Restatement of Contracts, cited in *Algona v. Pacific, supra*, is omitted from Restatement (Second) of Contracts. See Restatement (Second) of Contracts § 253 Reporter's Note (1981). In fact, Restatement (Second) of Contracts § 253 Reporter's Note states that "repudiation following partial breach by non-performance is to be treated as a total breach and not as an 'anticipatory breach' ".