**Arlyn W. NORDHORN, Plaintiff-Appellant,**

v.

**LADISH COMPANY, INC., a Wisconsin Corporation; Armco, Inc., an Ohio Corporation, Defendants–Appellees.**

**No. 92–35472.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1993.

Decided Nov. 19, 1993.

Gerald A. Palm and Rebekah R. Ross, Williams, Kastner & Gibbs, Seattle, WA, for plaintiff-appellant.

J. Peter Shapiro and Heidi A. Irvin, Bogle & Gates, Seattle, WA, for defendant-appellee Armco, Inc.

Hugh E. Bangasser and Marc C. Levy, Preston, Thorgrimson, Shidler, Gates & Ellis, Seattle, WA, for defendant-appellee Ladish Co., Inc.

Before: GOODWIN, SCHROEDER and PREGERSON, Circuit Judges.

SCHROEDER, Circuit Judge:

In this breach of contract suit, the district court dismissed Arlyn Nordhorn's claim against Ladish Company and Armco, Inc. on res judicata grounds, holding that Nordhorn should have raised this claim in an earlier suit against HITCO, a former sister company of Ladish. Nordhorn appeals. We reverse because Nordhorn's claim in this case is based on a different contractual relationship and is against different parties than those involved in the preceding litigation. Res judicata principles therefore do not apply to bar this litigation. We reverse and remand for further proceedings, including a determination of whether this claim is barred by the statute of limitations.

**I**

In the early 1980's, HITCO and Ladish Company were both subsidiaries of Armco, Inc. At that time, Armco owned a "family of companies" that manufactured different airplane parts. Ladish and HITCO did not manufacture the same products, although as sister companies, they often engaged in collective marketing efforts. In 1983, Nordhorn promoted both HITCO and Ladish products to Grumman and Rohr, general contractors bidding on Gulfstream and Fokker Aircraft's "G–IV/F100 Program." The relationship between HITCO, Ladish, and Armco was dissolved sometime prior to 1988, when Nordhorn sued HITCO. HITCO therefore had no corporate relationship with Ladish or Armco at any time during the course of the HITCO litigation.

Nordhorn's suit against HITCO was based upon a breach of a written sales agreement signed in May 1984. Nordhorn was to promote a specific list of nacelle components manufactured by HITCO for use in Gulfstream and Fokker's G–IV/F100 Program, and was to be paid a commission on sales. A "nacelle" is an aircraft engine casing, and does not include the engine mounts manufactured by Ladish. That lawsuit was settled in July of 1989, pursuant to a written agreement in which Nordhorn agreed to waive "all claims and counterclaims asserted or which could have been asserted in [that] case."

During the course of discovery in the HITCO litigation, Nordhorn learned of his claim against Ladish and Armco. He asserts that this claim is based upon a separate oral agreement he had with Ladish to promote their forged metal engine mounts for use in the G–IV/F100 Program, along with the nacelle components manufactured by HITCO. According to Nordhorn, Grumman won the bid for the G–IV/F100 Program but informed him that the Ladish engine mounts would not be used in the contract. He alleges that months later, when Grumman decided to purchase the engine mounts after all, Ladish never informed Nordhorn of the sales. Nordhorn alleges that Ladish breached its agreement by failing to pay Nordhorn commissions on those sales.

Following the HITCO settlement, Nordhorn filed this action against Ladish and Armco (referred to collectively as "Ladish"). The district court entered judgment in favor of the defendants on res judicata grounds, stating that the claim against Ladish could and should have been brought in the earlier suit against HITCO.

**II**

 In order to bar a later suit under the doctrine of res judicata, an adjudication must (1) involve the same "claim" as the later suit, (2) have reached a final judgment on the merits, and (3) involve the same parties or their privies. *Blonder–Tongue Laboratories v. Univ. of Ill. Found.*, 402 U.S. 313, 323–24, 91 S.Ct. 1434, 1439–40, 28 L.Ed.2d 788 (1971); *Davis Wright & Jones v. National Union Fire Ins. Co.*, 709 F.Supp. 196 (W.D.Wa.1989), *aff'd*, 897 F.2d 1021 (9th Cir. 1990). Because Nordhorn's suit against Ladish involves an alleged breach of a different contract by a different company than that involved in the earlier suit against HITCO, the elements of res judicata are not met in this case.

*A. Identity of claims*

 Nordhorn's suit against Ladish does not involve the same "claim" as his suit

against HITCO. The Ninth Circuit determines whether or not two claims are the same for purposes of res judicata with reference to the following criteria:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airline,* 681 F.2d 1199, 1201–02 (9th Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982) (quoting *Harris v. Jacobs,* 621 F.2d 341, 343 (9th Cir.1980)); *Davis Wright,* 709 F.Supp. at 199. First, no rights or interests established in the settlement agreement between Nordhorn and HITCO would be affected by the prosecution of this suit. Nordhorn has not sued HITCO, or any of HITCO's subcontractors on the nacelle bid. Ladish was not a party to the prior suit against HITCO, nor were the companies related at that point. There was no reason for HITCO voluntarily to take responsibility for commissions owed solely by companies with which it had no continuing relationship. Thus the settlement with HITCO, in covering all claims that could have been raised against HITCO, could not cover claims that could be asserted only against Ladish.

Second, while some of the same evidence is relevant to both suits, the crucial evidence in the Ladish suit, evidence that an oral contract between Nordhorn and Ladish existed and that Ladish sold forged metal engine mounts to Grumman without paying commissions to Nordhorn in violation of that contract, was at most tangential to the HITCO lawsuit. For the same reason, although the two suits are related in the sense that the companies and products were at one time related, Nordhorn is not alleging an infringement of the same "right," or a claim based on the same nucleus of facts in his suit against Ladish as he did against HITCO. Nordhorn claimed a right to be paid commissions under an alleged oral contract with Ladish which is separate from his right asserted in the HITCO litigation to be paid commissions under the written sales agreement with HITCO.

### B. *Identity of Parties*

In addition, Ladish was neither a party to the HITCO action, nor in privity with HITCO at the time of the HITCO litigation. *See* Restatement (2nd) of Judgments §§ 34(3), 39, 43–61 (a person who is not a party to an action is generally not entitled to the benefits of res judicata). This Circuit has held that when two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other. *E.g., In re Dominelli,* 820 F.2d 313 (9th Cir.1987) (junior lienholder not permitted to relitigate validity of senior lienholder's interest provision, where that claim had already been decided in suit brought by bankruptcy trustee); *United States v. ITT Rayonier, Inc.,* 627 F.2d 996 (9th Cir.1980) (EPA could not sue to enforce Water Pollution Control Act, where same issue had been litigated in state court by the Washington Department of Ecology); *Davis Wright,* 709 F.Supp. 196 (insurance company could not sue law firm after suing firm's client for the same fraud).

Corporate affiliations may be relevant in determining whether two parties are in privity for purposes of issue or claim preclusion under this analysis where there is identity of control. For example, in *In re Gottheiner,* 703 F.2d 1136 (9th Cir.1983), the defendant in prior litigation was wholly owned by the defendant in the later litigation, and collateral estoppel principles barred the second suit. But there is no similar identity of interest or control between HITCO and Ladish in this case. Although the interests of Ladish and HITCO were aligned in the 1980s when they were marketing their related products to airline manufacturers, by the time of the HITCO litigation there was no relationship whatsoever. Ladish had no participation in or control over the HITCO lawsuit, and there is no indication that HITCO had any interest in Ladish's affairs or well-being during or after the lawsuit against HITCO. Thus, it cannot be said that HITCO was Ladish's "virtual representative," or

that fairness requires that Ladish not be sued at this time. *United States v. ITT Rayonier, Inc.*, 627 F.2d at 1003 (citing *Aerojet Gen'l Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975)).

Thus, because the claim against Ladish does not involve the same contract or defendants as those parties in the prior litigation, and because the defendants in the suit were not in privity with HITCO at the time of the prior litigation, res judicata does not bar the instant suit.

### III

As an alternative ground for affirming the district court's judgment, Ladish contends that the claim is barred by the three-year Washington statute of limitations for oral contracts. RCW 4.16.080(3). Under Washington law, Nordhorn became entitled to commissions under his oral agreement when Ladish contracted to sell engine mounts to Grumman in April or May of 1984. *Colwell v. Eising*, 118 Wash.2d 861, 827 P.2d 1005, 1009 (1992). This suit was not filed until 1991. Nordhorn argues, however, that the applicable statute of limitations was tolled until 1989, when he discovered that Ladish had in fact made sales to Grumman without paying him commissions. Nordhorn argues that the statute of limitations was tolled either because Ladish fraudulently concealed information necessary to his suit, or because Washington's discovery rule applies to his claim.

■ Nordhorn's claim of "fraudulent concealment," is based on his allegation that when Grumman changed its mind and decided to purchase the mounts from Ladish, Ladish failed to track its sales by invoicing them through HITCO, as agreed, or to pay him the commissions due. Ladish never gave any false information to Nordhorn regarding its sales of engine mounts, however. Rather, Nordhorn contends only that he was led to believe that Ladish would not be making any sales covered by their contract because Grumman told him, subsequent to his presentation, that the Ladish engine mounts would not be used in the G–IV/F100 program. At the time, this statement was true.

Ladish itself made no representations to Nordhorn concerning actual sales to Grumman.

■ Washington courts require more than a mere failure to provide information for a claim of fraudulent concealment. As the court stated in *Wood v. Gibbons*, 38 Wash. App. 343, 685 P.2d 619, *rev. denied*, 103 Wash.2d 1009 (1984), a case of fraudulent concealment is made out when a plaintiff avers facts which show (1) that the plaintiff exercised due diligence in trying to uncover the facts, and (2) that the defendant engaged in affirmative conduct which would lead a reasonable person to believe that no claim for relief existed. *See also Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wash.2d 126, 443 P.2d 544, 549–50 (1968). Assuming, *arguendo*, that Nordhorn exercised due diligence in relying upon Grumman's then accurate statement of its plans, the defendant, Ladish, engaged in no affirmative conduct to mislead Nordhorn.

■ Nordhorn's stronger contention is that Washington's liberal discovery rule should apply to his case. Under the Washington discovery rule, a cause of action generally accrues upon the discovery of the elements of the claim, or when, in due diligence, the plaintiff should have discovered the elements of the claim. *See Matter of Estates of Hibbard*, 118 Wash.2d 737, 826 P.2d 690, 694 (1992). Here, Nordhorn took no affirmative steps to inquire about whether any payments were owing to him after the alleged sales to Grumman began. Having been told that Grumman would not be using Ladish's engine mounts for the G–IV/F100 Program, Nordhorn never tried to ascertain whether that fact had changed. However, under Washington law such a duty to make affirmative inquiry does not exist in all circumstances.

Nordhorn analogizes his case to *U.S. Oil & Refining Co. v. State*, 96 Wash.2d 85, 633 P.2d 1329 (1981) (en banc), in which the Washington Supreme Court applied the discovery rule to the Washington Board of Ecology's suit against U.S. Oil for illegally discharging pollutants. Although the Board had made no affirmative efforts within the

statute of limitations to inquire as to whether any such discharges were occurring, U.S. Oil had knowingly violated its statutory duty to report its discharges to the Board. Nordhorn's analogy to *U.S. Oil* is valid if and only if he is able to show that Ladish knowingly and intentionally violated the terms of an oral contract to pay Nordhorn commissions. In other words, Nordhorn's claim is barred unless he is able to show bad faith.

Finally, Nordhorn argues that Ladish may have shipped engine mounts to Grumman within the three-year statute of limitations, and that claims based on those sales should not be barred. However, we need not decide that issue at this time, because there is no evidence that any such shipments were in fact made. In addition, because neither the existence nor the terms of the alleged oral contract with Ladish have been proven, it is impossible to say at this point whether a series of shipments would constitute a single sale or several sales.

The decision of the district court is RE-VERSED AND REMANDED for proceedings consistent with this opinion.