FILED

07/27/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0418

DA 20-0418

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 185N

WADE AYALA,

       Plaintiff, Counterclaim-Defendant.
       and Appellee,

   v.

GAIL STAFFORD,

       Defendant, Counter-Claimant,
       Third-Party Plaintiff and Appellant,
       and Cross-Appellee,

   v.

RECONTRUST COMPANY, N.A.; BANK OF AMERICA, N.A.;
FEDERAL NATIONAL MORTGAGE ASSOCIATION; and
EQUITY PROCESS MANAGEMENT, INC.,

       Third-Party Defendants, Appellees,
       and Cross-Appellants,

PAMELA PFAFF, Personal Representative of the Estate
of JOSEPH NOWAKOWSKI; BRANDY LOU AYALA,
SADIE LYNN BARRETT; and DOES 1-10,

       Third-Party Defendants and Appellees.

APPEAL FROM:   District Court of the Second Judicial District,
                In and For the County of Butte/Silver Bow, Cause No. DV-18-267
                Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

         Adam H. Owens, Gregory G. Costanza, Granite Peak Law, PLLC,
         Belgrade, Montana

For Appellee Wade Ayala:

Charles E. Hansberry, Jenny M. Jourdonnais, Hansberry & Jourdonnais, PLLC, Missoula, Montana

For Appellees and Cross-Appellants Recontrust Company, N.A.; Bank of America, N.A.; and Federal National Mortgage Association:

Mark D. Etchart, Browning, Kaleczyc, Berry & Hoven, P.C., Helena, Montana

For Appellee and Cross-Appellant Equity Process Management, Inc.:

John F. Haffey, Mitchell J. Vap, Haffey Vap PLLC, Missoula, Montana

Submitted on Briefs: June 23, 2021

Decided: July 27, 2021

Filed:

_____
                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of non-citable cases published in the Pacific Reporter and Montana Reports.

¶2     Gail Stafford appeals the July 23, 2020 Order on Pending Matters, entered by the Second Judicial District Court, Silver-Bow County.  We affirm in part, and reverse in part, and remand with instructions to dismiss all of Stafford's claims consistent with this Opinion.  The primary issue on appeal is whether Stafford's claims are barred by application of the doctrine of res judicata, and we conclude that they are.

¶3     In January 2010, Stafford began leasing the building referred to as the "back house" on the property located at 86 Elkhorn Lane in Butte, Montana (Property).  Stafford maintains she and Colin Caffrey, the Property owner at that time, signed a hand-written residential landlord-tenant agreement with an initial term of one year, with the option to continue the lease on a month-to-month basis thereafter.  Stafford did not retain a copy of the agreement and Caffrey died two years later, leaving no written evidence of the agreement.

¶4     Caffrey had purchased the Property in 2008.  He executed a promissory note in favor of Mann Mortgage, LLC on January 18, 2008, and also executed a Deed of Trust listing Mortgage Electronic Registration Systems, Inc. (MERS), as the grantee and nominee on behalf of Mann Mortgage and its successors or assignees.  Caffrey, addressing medical

issues up to his passing, fell behind on payments, and on July 6, 2012, MERS assigned the Deed of Trust to Bank of America, N.A. (BANA). BANA substituted ReconTrust Company, N.A. (ReconTrust) as substitute trustee on August 6, 2012, and scheduled a foreclosure sale of the Property on December 14, 2012. Upon learning of the sale, Stafford contacted ReconTrust and was informed that the opening bid would be $190,851.90. Stafford claims to have attended the sale, bringing with her a cashier's check for $170,000 and $49,000 in cash, totaling $219,000. Joseph Nowakowski, an employee of Equity Process Management, Inc., (Equity) cried the sale. Prior to the sale, Stafford claims Nowakowski examined her means of payment and determined that she was qualified to bid, while turning away another potential bidder, Anthony King, for lack of appropriate funds. As alleged by Stafford, Nowakowski then "made a call out of earshot," after which he returned and stated that "he was not allowed to answer any questions and that he was about to read [the Trustee's Sale script]," which stated:

> The beneficiary has submitted a written bid in the amount of $190,851.90. This is the minimum bid. We have been authorized by the beneficiary to enter a final bid in the amount of $238,564.88. I now open the bidding with the minimum bid of $190,851.90.

Nowakowski declared under penalty of perjury[1] that he read the script "at the prescribed time and place." Stafford claims to have immediately bid "one dollar more" for a sum of $190,852.90. According to Stafford, Nowakowski then verbally stopped the sale, stating "that the group holding the auction required the entire amount of the $233,000

---

[1] Nowakowski passed away in 2018.

obligation[,]"[2] leaving Stafford unable to match the acceptable bid threshold. Affidavits of Stafford and the only two other witnesses, King and David Kneebone, claim Stafford was the only bidder present at the public sale. In contrast, in a signed affidavit dated September 5, 2014, Nowakowski stated that no third-party bid was made and, according to his declaration, "the property sold to the beneficiary for $190,851.90." The property was sold to the beneficiary, Federal National Mortgage Association (Fannie Mae), and a Trustee's Deed with a sales price of $190,851.90 was recorded on December 24, 2012. Stafford signed a notarized affidavit confirming that she became aware of the sale to Fannie Mae on December 27, 2012, and sometime between that date and December 31, 2012, she was notified by ReconTrust of its use of an auctioneering service, Equity.

¶5 Following the foreclosure sale, Stafford continued to occupy the back house. On March 13, 2013, Fannie Mae served Stafford notice that her tenancy would expire on April 13, 2013. Stafford refused to vacate and held over her tenancy, and in June 2013, Fannie Mae filed an unlawful detainer action against Stafford. *See Fannie Mae v. Stafford*, No. DA 18-0439, 2019 MT 114N, 2019 Mont. LEXIS 174 (*Stafford I*). Stafford answered and counterclaimed, denying Fannie Mae's standing and alleging it did not legally own the property because there was no representative for Fannie Mae present at the public auction. *Stafford I*, ¶ 5. Stafford's counterclaim asked the district court to "enter a declaratory judgment quieting title in her name as to a leasehold interest in the property for a period of

---

[2] There is a dispute as to the minimum bid amount, with witness David Kneebone recalling $233,000, as opposed to, Stafford who recalls $238,000. Stafford relies on the $233,000 figure in her brief.

5

one year." *Stafford I*, ¶ 5. Stafford did not claim she had a contract to purchase the Property as a result of the actions taken at the auction. Fannie Mae moved for summary judgment on all of Stafford's claims, but consideration was delayed as Fannie Mae failed to comply with discovery, even over Stafford's motion to compel. Stafford also sought summary judgment, and after oral arguments in September 2014, the matter pended for over three years despite the parties continuing to file additional motions and notices of issues. *Stafford I*, ¶ 6.

¶6     In January 2018, Wade Ayala purchased the Property from Fannie Mae, and Fannie Mae quitclaimed the Property to him. In March 2018, Fannie Mae, no longer having an interest in the Property, moved to dismiss the action with prejudice. *Stafford I*, ¶ 7. Stafford objected and moved for leave to amend her pleadings to "bring additional counterclaims for fraud, negligent misrepresentation, unjust enrichment, compensatory and punitive damages, violation of the Montana Unfair Trade Practices and Consumer Protection Act, and a declaratory judgment to quiet title in Stafford's favor"—all claims rooted in the belief she was entitled to rightful ownership and possession of the Property, a peculiar request given that, up until that point, neither the court nor Fannie Mae was aware that Stafford claimed an ownership interest in the Property. *Stafford I*, ¶ 17. On July 2, 2018, the district court denied Stafford's motion for leave to amend and granted Fannie Mae's motion to dismiss with prejudice, though the order stipulated that Stafford was "free to file a separate action against any party or parties presently claiming an interest in the subject real property." We affirmed the court following Stafford's appeal, stating:

6

Whether Fannie Mae lawfully owned the property was only tangentially related to Stafford's primary issue—whether she was entitled to a one-year leasehold interest. Stafford did in fact remain on the property for one year (and every year since). Thus, regardless of Stafford's complaints about the property's public auction, because Stafford already received the relief she requested, the District Court correctly found that it could no longer provide her relief, rendering her counterclaim moot.

The District Court acted within its discretion in denying Stafford's motion for leave to amend her pleading. *The court found the timing and nature of Stafford's proposed amendments problematic. It found Stafford knew about the potential additional parties and claims several years before filing her motion and took issue with the fact that she only filed her motion to amend after Fannie Mae filed its motion to dismiss.* The District Court thus concluded the "liberal freedom to amend pleadings contemplated by [M. R. Civ. P. 15], does not afford any relief to [Stafford] under the circumstances." *Stafford also offered no meaningful justification for failing to move to amend her pleading earlier.* Accordingly, . . . we hold the court did not abuse its discretion by denying Stafford's motion for leave to amend.

After Fannie Mae sold the property, the third-party purchaser [here, Ayala] *would have become a relevant party in any lawsuit that sought to establish ownership of the property.* The fact remains, however, that Stafford only sought to establish a leasehold interest in the property with her initial counterclaim. *She did not assert an ownership interest until she filed her motion for leave to amend,* and therefore, the District Court did not abuse its discretion by denying her motion under this theory.

*Stafford I*, ¶¶ 11, 14, 18 (emphasis added).

¶7     On July 5, 2018, Ayala initiated his own wrongful detainer action against Stafford. Stafford filed an Answer, Counterclaim, and Third-Party Complaint against BANA, ReconTrust, and Fannie Mae (all three collectively, the "Banks"), Equity, and others.[3] Stafford's Counterclaim and Third-Party Complaint contained eight claims: (1) breach of

---

[3] Also named in the third-party complaint were Nowakowski, Brandy Lou Ayala, Sadie Lynn Barrett, and Does 1-10. None of these additional parties are involved in this appeal.

contract; (2) declaratory judgment—violation of the Small Tract Financing Act (STFA); (3) actual fraud/constructive fraud/negligent misrepresentation; (4) declaratory judgment—fraudulent title; (5) unjust enrichment/constructive trust; (6) quiet title; (7) negligence; and (8) violation of the Montana Unfair Trade Practices and Consumer Protection Act (UTPA). Claims (4), (5), and (6) were counterclaims against Ayala, with claims (4) and (6) also alleged against Fannie Mae and claim (6) naming BANA as well. Claims (1), (2), (3), (7), and (8) were third-party claims against the Banks and Equity. The Banks filed a Motion to Dismiss the claims against them on numerous grounds, including the statute of limitations, lack of standing, lack of enforceable contract, lack of specificity regarding the pleading of the fraud claims, and lack of duty. Ayala and Equity filed separate Motions for Summary Judgment, arguing the uncontested facts failed to establish an enforceable contract for the purchase of the Property and that Stafford's claims were time-barred.

¶8 Prior to oral arguments on these motions, we issued our decision in *Stafford I*, leading Ayala and the Banks to argue that, in addition to the grounds stated in their respective motions, Stafford's claims were also barred by res judicata. Despite this, the District Court did not address the applicability of res judicata in its subsequent order, issued July 23, 2020. The order granted summary judgment to Ayala on the ground no contract ever formed at the sale for Stafford to purchase the Property. Regarding Equity, the court denied summary judgment with respect to negligence and the UTPA claim, reasoning that there were disputed issues of fact regarding what occurred at the sale, but granted summary judgment to Equity in all other respects. Finally, reasoning Stafford had standing and the

8

statute of limitations was equitably tolled, the court denied the Banks' Motion to Dismiss on all claims except fraud, which was granted on the ground the fraud claims were not pled with sufficient particularity. Stafford filed a notice of appeal; both the Banks and Equity filed a notice of cross-appeal.

¶9 We review a district court's ruling on a motion to dismiss de novo, applying the standards set forth in M. R. Civ. P. 12(b)(6). *Victory Ins. Co. v. Mont. State Fund*, 2015 MT 82, ¶ 11, 378 Mont. 388, 344 P.3d 977. We will affirm the dismissal of a complaint for failure to state a claim if "it appears beyond a doubt that the [counter-claimant or third-party] plaintiff can prove no set of facts which would entitle him to relief." *Victory Ins. Co.*, ¶ 11 (citing *Scheafer v. Safeco Ins. Co.*, 2014 MT 73, ¶ 14, 374 Mont. 278, 320 P.3d 967). This requires that, when reviewing a motion to dismiss under Rule 12(b)(6), we take as true "all well-pled allegations and facts in the complaint" and construe the complaint in the "light most favorable to the plaintiff." *Scheafer*, ¶ 14. Whether a complaint has failed to state a claim for which relief can be granted is a legal conclusion reviewed for correctness. *Scheafer*, ¶ 14.

¶10 We review a district court order granting summary judgment de novo, applying the same Rule 56 criteria as applied by the lower court. *Safeco Ins. Co. v. Liss*, 2000 MT 380, ¶ 21, 303 Mont. 519, 16 P.3d 399. Summary judgment is an extreme remedy which may only be granted when there is no genuine issue of material fact such that the movant is entitled to judgment as a matter of law as confirmed by a review of "the pleadings, the discovery and disclosure materials on file, and any affidavits[.]" M. R. Civ. P. 56(c)(3); *see also Safeco Ins. Co.*, ¶ 22 (referring to summary judgment as an "extreme remedy").

9

To be entitled to summary judgment, the movant is therefore tasked with "demonstrating a complete absence of any genuine factual issue" such that even with "all reasonable inferences that might be drawn from the offered evidence" construed in favor of the nonmovant, there is no judiciable controversy. *Safeco Ins. Co.*, ¶ 22. Should the movant satisfy her burden, the burden shifts to the nonmovant, who, rather than merely "rely[ing] upon their pleadings, nor upon speculative fanciful, or conclusory statements[,]" must set forth particularized facts in opposition of summary judgment. *Thomas v. Hale*, 246 Mont. 64, 67, 802 P.2d 1255, 1257 (1990). We are not limited in our review and may affirm summary judgment on any ground found within the record on appeal. *Safeco Ins. Co.*, ¶ 25.

¶11 A final judgment may have preclusive effect on future litigation through application of res judicata (claim preclusion) or collateral estoppel (issue preclusion). *Denturist Ass'n of Mont. v. State*, 2016 MT 119, ¶ 10, 383 Mont. 391, 372 P.3d 466 (*Denturist*) (citing *Baltrusch v. Baltrusch*, 2006 MT 51, ¶¶ 15-18, 331 Mont. 281, 130 P.3d 1267). These congruous doctrines prevent piecemeal litigation and collateral attacks on judgments while also conserving judicial resources, attributes which in turn "uphold[] the judicial policy that favors a definite end to litigation." *Denturist*, ¶ 10 (citing *Baltrusch*, ¶ 15). Res judicata is at issue here.

¶12 Res judicata operates to bar "the relitigation of a claim that the party asserting the claim already has had an opportunity to litigate." *Poplar Elem. Sch. Dist. No. 9 v. Froid Elem. Sch. Dist. No. 65*, 2020 MT 216, ¶ 32, 401 Mont. 152, 471 P.3d 57 (*Poplar*) (citing *Baltrusch*, ¶ 15); *accord Denturist*, ¶ 12 (noting that collateral estoppel serves the distinct

10

purpose to "bar[] the same parties or their privies from relitigating issues in a second suit that is based upon a different cause of action"). Res judicata ought be applied, and the attendant claim barred, if: (1) the parties or their privies are the same; (2) the capacities of the persons are the same in reference to the subject matter and to the issues; (3) the subject matter of the present and past actions is the same; (4) the issues are the same and relate to the same subject matter; and (5) a final judgment has been entered on the merits in the first action. *Poplar*, ¶ 39 (citing *Adams v. Two Rivers Apts., LLLP*, 2019 MT 157, ¶ 8, 396 Mont. 315, 444 P.3d 415).

¶13 Regarding the first element, in the context of a judgment, privity applies where one's interest has been legally represented at trial by another party such that the "'two parties are so closely aligned in interest that one is the virtual representative of the other[.]'" *Denturist*, ¶ 14 (quoting *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1405 (9th Cir. 1993)). Whether two parties are in privity "is a factual determination of substance, not mere form[,] that requires a consideration of the realities of litigation." *Denturist*, ¶ 14 (internal quotation and citation omitted). The second element requires that "the capacities of the persons must be the same in relation to the subject matter and issues between them[,]" *Brault v. Smith*, 209 Mont. 21, 28, 679 P.2d 236, 239 (1984), a threshold requiring that the parties maintain the same stance with respect to the underlying facts and issues. *First Bank, (N.A.) v. Dist. Court for Fourth Judicial Dist.*, 226 Mont. 515, 520, 737 P.2d 1132, 1135 (1987); s*ee, e.g.*, *Brault*, 209 Mont. at 28, 679 P.2d at 239 (holding that shareholder suit was barred by derivative suit since the derivative suit was brought by the shareholders in their capacity as shareholders).

11

¶14 Element three, concerning subject matter, focuses on the "basic factual underpinning" and "whether the two cases arose from the same set of material facts." *Schweitzer v. City of Whitefish*, 2016 MT 254, ¶ 16, 385 Mont. 142, 383 P.3d 735; *see, e.g.*, *State ex rel. Harlem Irrigation Dist. v. Mont. Seventeenth Judicial Dist. Ct.*, 271 Mont. 129, 133-34, 894 P.2d 943, 945 (1995) (*Harlem*) (determining claim preclusion barred a subsequent claim for wrongful denial of water after plaintiffs' first action for alleged property damages because the claims arose from the same underlying fact—the district failed to produce water). The fourth element often folds into the third and the question is not whether the exact issue was litigated, but whether the contested material facts of the first case presented an opportunity to litigate the issue. *Harlem*, 271 Mont. at 134, 894 P.2d at 946. Thus, application of res judicata is not limited to those matters actually litigated but "'includes claims that were or *could have been* litigated in the first action.'" *Poplar*, ¶ 32 (quoting *Adams*, ¶ 8) (original emphasis).

¶15 As to the final element, "[t]o determine whether a final judgment on the merits has been reached, we look to see if the issue was actually litigated and adjudged as shown on the face of the judgment." *McDaniel v. State*, 2009 MT 159, ¶ 39, 350 Mont. 422, 208 P.3d 817 (citation omitted) (considering collateral estoppel). This is a holistic endeavor, and prior to a judgment or order being given preclusive effect, "'the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered, and should refuse preclusion if the decision was avowedly tentative.'" *Baltrusch*, ¶ 22 (quoting Restat 2d of Judgments, § 13 cmt. g) (considering collateral estoppel).

12

¶16     The Banks and Ayala contend all of Stafford's claims should be dismissed as res judicata, arguing all five elements are satisfied, namely: (1) Stafford was dilatory in her efforts in the first action to amend her complaint despite knowing all potential parties prior to Fannie Mae filing her motion to dismiss; (2) the parties maintain the same positions that they previously held; (3) the same material facts apply in each action; (4) the dispositive issue at bar could have been litigated in *Stafford I*; and (5) the district court dismissed the prior case "with prejudice."[4]

¶17     The first two elements are readily satisfied. The *Stafford I* district court found that Stafford "knew about the potential additional parties and claims several years ago[,]" a finding affirmed on appeal, yet she continued to employ dilatory tactics. *Stafford I*, ¶ 14. That which could have been litigated in the first action is barred by res judicata, *Poplar*, ¶ 32, a proposition that necessarily includes those parties that could have been included in prior litigation but were not. *See Adams*, ¶ 20 (determining that party that "could have joined the previous case" was precluded from relitigating the claims and issues already adjudicated). Given that Stafford's motion to amend in *Stafford I* proposed to include Ayala, Equity, and ReconTrust—in addition to Fannie Mae, who was already party to the suit—along with the fact that BANA's early involvement was public record, all of the parties could have been part of the previous action. As to the second element, the parties

---

[4] Though Equity did not raise res judicata, "courts have consistently described a [] court's sua sponte consideration of a res judicata defense as permissible but not required." *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 208 (4th Cir. 2013) (citations omitted); *accord Arizona v. California*, 530 U.S. 392, 412, 120 S. Ct. 2304, 2318 (2000) (stating that a court sua sponte raising a preclusion defense "might be appropriate in special circumstances").

are situated just as they were in the first action; or, in the case of Equity, BANA, ReconTrust, and Ayala, how they would have been situated had Stafford timely amended to include them. Indeed, in both actions Stafford is a holdover on a lease attempting to establish a property interest, Equity is a levying service seeking to legitimize the auction that it conducted, and the Banks and Ayala each look to eject Stafford. Put another way, Stafford is attempting to establish a property interest while all other parties are attempting to uphold the integrity of the public sale and the property rights that flow therefrom.

¶18 Stafford contends she "could not have brought her current claims" previously because "Ayala was not involved" in *Stafford I*. It is true Ayala was not involved in *Stafford I*, but that is because of Stafford's failure to involve him. Ayala agreed to purchase the property from Fannie Mae on December 13, 2017, with closing taking place January 22, 2018. Fannie Mae moved for dismissal on March 15, 2018. In addition to having this time to amend and join Ayala, Stafford had five-plus years to join the additional Bank defendants and Equity, yet did not do so. Any party absent from *Stafford I* is by Stafford's own doing.

¶19 Before addressing the third and fourth elements, we review precedent on a nearly identical situation. In *City of Bozeman v. AIU Ins. Co.*, 272 Mont. 349, 900 P.2d 929 (1995) (*AUI II*), a contractor sued the City of Bozeman for defamation, breach of contract, and breach of the implied covenant of good faith and fair dealing. The jury returned a special verdict finding mutual mistake regarding the contract and violation of the implied covenant, while denying liability on the defamation claim. *See Story v. Bozeman*, 242 Mont. 436, 440-41, 791 P.2d 767, 769-70 (1990) (*Story I*). AIU originally defended the

14

City against Story's claims but reserved its right to later deny coverage, a prospect that came to fruition when AIU denied coverage following the verdict on the ground that the defamation claim was the only basis for coverage. *AIU II*, 272 Mont. at 351, 900 P.2d at 930.

¶20 The City then filed suit against AIU for breaching the duty to defend, though it did not make any claims regarding the extent of the coverage. *See City of Bozeman v. AIU Ins. Co.*, 262 Mont. 370, 865 P.2d 268 (1993) (*AIU I*). Thereafter, we issued our decision in *Story I*, which remanded the case for further proceedings, and AIU resumed its defense of the City. *AIU II*, 272 Mont. at 351, 900 P.2d at 931. The second jury verdict again found no defamation but held the City was liable on the implied warranty claim, leading to AIU resuming its coverage position that defamation had been the only basis for coverage. *AIU II*, 272 Mont. at 351, 900 P.2d at 931; *see Story v. City of Bozeman*, 259 Mont. 207, 856 P.2d 202 (1993) (*Story II*). Following the second jury verdict, the City moved to amend its complaint in *AIU I* to include coverage issues. *AIU II*, 272 Mont. at 351, 900 P.2d at 931. AIU objected on the basis that coverage was entirely unrelated to the duty to defend. *AIU II*, 272 Mont. at 351, 900 P.2d at 931. The trial court agreed and denied the motion to amend, reasoning that the coverage issue was separate and distinct. *AIU II*, 272 Mont. at 351, 900 P.2d at 931. The trial court found AIU had breached the duty to defend and awarded the City costs. *AIU II*, 272 Mont. at 351, 900 P.2d at 931. AIU appealed, and we reversed the judgment of the lower court in *AIU I*. Despite "[t]he court's refusal of the motion to amend [being] a ruling which could have been appealed by the City by way of a cross-appeal[,]" the City did not cross-appeal the denial of the motion to

15

amend and the coverage issue was not addressed by this court in *AUI I*. *AIU II*, 272 Mont. at 352, 900 P.2d at 931-32.

¶21 The City appealed the second jury verdict in *Story II* and we affirmed the damage award. *AIU II*, 272 Mont. at 351, 900 P.2d at 931. The City then sought declaratory relief supporting the existence of coverage under the AIU policy for Story's claim, but the trial court granted AIU's motion for summary judgment on the ground of res judicata. *AIU II*, 272 Mont. at 352, 900 P.2d at 931. On appeal, we affirmed, reasoning "'the doctrine of res judicata bars not only issues that were actually litigated, but also those that could have been litigated in a prior proceeding.'" *AIU II*, 272 Mont. at 354, 900 P.2d at 932 (quoting *Harlem*, 271 Mont. at 134, 894 P.2d at 946). We followed by noting that the City "very candidly concedes that it filed this declaratory action to raise issues which it was not permitted to raise[] in *AUI I* because the District Court denied its motion to amend its complaint. The City, however, offers no explanation as to why, after having attempted to amend the complaint to include the coverage issue, it failed to pursue that issue on appeal in *AUI I*." *AIU II*, 272 Mont. at 354, 900 P.2d at 932. We concluded that, since the basis of *AUI II* was the City seeking to litigate an issue which it had sought in the first action to litigate by way of an amended complaint, and since the City did not appeal the denial, the city had thus accepted the ruling and the insurance coverage issue was therefore barred by the doctrine of res judicata. *AIU II*, 272 Mont. at 354, 900 P.2d at 933.

¶22 Here, as made clear from the pleadings, both actions relied on the same set of material facts. Stafford argues the issues are not harmonious between the two actions because her motion to amend was denied, leaving only "[Fannie Mae's] unlawful detainer

16

claim and Stafford's request to quiet title for one year based on her 2009 lease" as the only two issues considered in *Stafford I*. Just as in *AIU II*, Stafford "very candidly concedes that [she] filed this [] action to raise issues which [she] was not permitted to raise[] in [*Stafford I*] because the District Court denied [her] motion to amend its complaint." *AIU II*, 272 Mont. at 354, 900 P.2d at 932. While Stafford did at least attempt to appeal the district court's denial of her motion to amend in *Stafford I*, we affirmed the denial of the motion to amend in light of the district court's finding that Stafford had ample knowledge and time to amend prior to Fannie Mae's motion to dismiss but elected not to do so. *Stafford I*, ¶ 14. Just as in *AIU II*, Stafford's opportunity to add parties and claims came and went prior to Fannie Mae filing its motion to dismiss in *Stafford I*.

¶23 Stafford further contends she "could *not* have brought her current claims" previously because Stafford was impeded by Equity and the Banks' obstructions; Stafford [had] state[d] ownership-related claims to the extent possible with the facts she had[;]" and it was the *Stafford I* district court that "blocked Stafford's attempt to amend and suggested she file a separate action." Concerning any potential obstructions erected against her in *Stafford I*, Stafford's frustration with the discovery process in that case has no ultimate impact here. We find no merit to the contention that "Stafford [had] state[d] ownership-related claims to the extent possible with the facts she had[;]" the record is barren of any indication of new evidence about the public sale of the Property after the *Stafford I* district court dismissed the action. Finally, the content of a motion to amend is adjudicated on the merits if it was properly dismissed by the district court. *AIU II*, 272 Mont. at 354, 900 P.2d at 932-33. Further, that the proposed amendment to her answer

17

was blocked by the *Stafford I* district court does not change the fact that Stafford had sufficient time and knowledge to amend her pleadings in the months and years leading up to Fannie Mae's motion to dismiss.

¶24 Element five is satisfied because there is a valid final judgment on the merits. A case that is dismissed with prejudice is a final judgment on the merits for purposes of res judicata, regardless of whether there was "substantive resolution of the merits" of claims. *Touris v. Flathead Cnty.*, 2011 MT 165, ¶ 15, 361 Mont. 172, 258 P.3d 1; *Xin Xu v. McLaughlin Research Inst. for Biomedical Sci., Inc.*, 2005 MT 209, ¶ 36, 328 Mont. 232, 119 P.3d 100 (barring defamation claim that could have been brought in prior action that had been dismissed with prejudice). A review of the totality of the circumstances— Stafford's dilatory tactics and failure to add defendants and claims as they became known to her—leaves us with a firm impression that *Stafford I* was a final judgment on the merits for present purposes, regardless of the lack of substantive resolution of the claims' merit.

¶25 Stafford argues that because the district court in *Stafford I* stated she was "free to file a separate action against any party or parties presently claiming an interest in the subject real property[,]" the previous decision was not on the merits and res judicata was not applicable. Though she attempts to broaden this to include Equity and the Banks, the District Court stated a separate action may be brought against those "*presently claiming an interest in the subject real property*[,]" a limitation that necessarily precludes actions involving those not claiming a present interest, namely the Banks and Equity. Further, we conclusively considered the ability to bring additional parties in *Stafford I*. We reasoned that Stafford's "prolonged delay in adopting a new legal theory [wa]s prejudicial to the

18

opposing party, especially where [Stafford] wait[ed] until after the opposing party file[d] [] a motion to dismiss." *Stafford I*, ¶ 13. Given Stafford's dilatory motive to drag out litigation as long as possible as she resided on the Property free of charge, *Stafford I*, ¶ 14, we determined that the prejudice of additional parties and legal theories was too great and denied Stafford's request that the case be remanded so that she might amend. *Stafford I*, ¶¶ 13, 14. We conclude Stafford's contention that res judicata does not apply because she filed the present suit prior to *Stafford I* fails under application of the controlling principles.

¶26 Even if res judicata did not apply against Ayala, who was not a party in *Stafford I*, we conclude those claims are time barred. Stafford contends the wide latitude afforded to the trustee by the District Court was in error, arguing that the sale was an auction without reserve, therefore statutorily requiring that her bid be accepted. However, regardless of whether the auction was with or without reserve, more than five years elapsed between the time that the auction took place in December 2012 and when Ayala filed this action in July 2018. Of the potentially applicable statutes of limitations, none exceed five years. *See* §§ 27-2-202(2), -231, MCA (five-year statute of limitation for claims stemming from oral contracts and all actions for relief not otherwise provided for); §§ 27-2-203, -207, MCA (two-year statute of limitations for fraud claims and injuries involving property); § 27-2-202(3), MCA (three-year statute of limitations for tort, constructive trust, unjust enrichment, and other claims not based in contract or fraud). Further, Stafford's contention that the eight-year statute of limitations for actions stemming from a written contract is applicable is incorrect because there is no written agreement to rely upon. *See* § 27-2-202(1), MCA.

19

¶27 Stafford contends, and the District Court found, that the statute of limitations was equitably tolled during the *Stafford I* proceedings. However, we disagree. Equitable tolling is utilized only in limited circumstances. *Lozeau v. GEICO Indem. Co.*, 2009 MT 136, ¶ 14, 350 Mont. 320, 207 P.3d 316. In determining whether equitable tolling is available, we have applied a narrow, three-part test:

> the statute of limitations may be tolled when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria: (1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to [the] defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.

*Lozeau*, ¶ 14 (quoting *Let the People Vote v. Bd. of Cnty. Comm'rs*, 2005 MT 225, ¶ 18, 328 Mont. 361, 120 P.3d 385). These requirements are not satisfied. Ayala was not on notice or otherwise aware of the prior proceeding and he would be greatly prejudiced by tolling the limitation period since he was not party when the discovery of evidence concerning the sale could have been gathered. Further, it can hardly be argued that Stafford's dilatory tactics, despite knowledge of the facts and changing legal theories, is conduct that is reasonable and in good faith.

¶28 Lastly, the substance of Stafford's declaratory judgment—fraudulent title, unjust enrichment/constructive trust, and quiet title claims against Ayala are requests grounded in equity for the specific performance of the auction as she alleges it to have occurred, through the creation of a constructive trust. The equitable doctrine of laches' purpose is to "discourage stale demands by the court refusing to interfere where there has been gross laches in prosecuting rights, or where long acquiescence in assertion of adverse rights has

20

occurred[,]" and is likewise applicable here. *Castillo v. Franks*, 213 Mont. 232, 241, 690 P.2d 425, 429 (1984).

¶29 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶30 Affirmed in part, reversed in part, and remanded with instructions to dismiss all of Stafford's claims consistent with this Opinion.

/S/ JIM RICE

We concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR